## Weber *v.* Weber, Appellant.

Argued April 27, 1944. Before KELLER, P. J., BALD-
RIGE, HIRT, KENWORTHEY, RENO and JAMES, JJ.
(RHODES, J., absent).

*Clair D. Moss,* for appellant.

*M. Leon Tolochko,* with him *Harry Pollock,* for ap-
pellee.

OPINION BY HIRT, J., September 27, 1944:

This case was heard by Judge RICHARDSON of the
court below; he found that the charges of cruel and
barbarous treatment, and indignities were sustained
and entered a decree of divorce on both grounds. Libel-
lant's former wife, with whom he had lived for eighteen
years, died in 1938. The parties to this action—both in
middle life—were married in 1939. This marriage was
the fourth for respondent; she had divorced three hus-
bands. There may be some question (and respondent
is entitled to the benefit of the doubt) whether respond-
ent is chargeable with conduct amounting to actual
physical violence or threats of it endangering libellant's
physical safety, but if he and his witnesses are to be
believed the charge of indignities to his person has

been clearly proven. The opinion of the court thus summarizes a part of libellant's testimony: "The parties lived together 'off and on' for a little more than a year. During this period, according to the libellant, respondent left about every five or six weeks and remained away for days at a time. When she returned she told libellant that she had been at the home of a son by a former marriage, or refused to explain her absence. Libellant testified that respondent was drunk at least six times, on which occasions she would use vile and profane language and assault the libellant. She refused to take care of the house or to prepare meals for the libellant or his family. She insulted libellant's friends and mistreated the children. On occasions she became drunk and disorderly in public. Respondent took libellant's pay and used it to pay bills for her own children, and spent for liquor the money which had been given to her to purchase clothing for the libellant's children. Other instances of misconduct appear in the testimony of libellant and his witnesses." This is an understatement of the many indignities suffered by libellant according to his testimony.

The case turns on the question of credibility. Libellant has worked for the same employer continuously for 22 years and is a person of some stability. He had reared a family of four children and provided a home for them and his former wife to the time of her death. He still maintains a home for his children. There is nothing inherently incredible in his testimony. Respondent explicitly but in general terms denied every act of mistreatment of her husband and on the other hand charged him with misconduct. Her testimony describes a perfect wife; she admits no failing, however human. In our judgment the very perfection of her defense casts doubt upon its validity; she 'doth protest too much.'

Although we are to decide the ultimate question on

our independent judgment we may look to the opinion of the trial judge, who saw and heard the witnesses, for confirmation of our conclusion that libellant's testimony is to be believed and that of the respondent is not. Upon the question of credibility the report of a master, who had the advantage of seeing and hearing the parties, while not controlling, may not be lightly disregarded. *Briggs v. Briggs,* 145 Pa. Superior Ct. 460, 21 A. 2d 415. Much more so, because of a wider experience, the conclusion of a common pleas judge is entitled to respect where credibility of witnesses is the controlling issue. Judge RICHARDSON in the opinion said: "The testimony raises many issues of fact, and the answer to these issues depends upon what witness or group of witnesses is believed. The writer saw and heard the witnesses and observed their demeanor on the stand and in the court room. From this experience, he accepted the testimony of the libellant and his witnesses, and granted the divorce."

The decree, limited to a divorce on the ground of indignities, is affirmed.