## Kimmel *v.* Kimmel, Appellant.

Argued March 12, 1947. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Victor Braddock,* with him *Frederick J. Templeton* and *Braddock & Sohn,* for appellant.

*E. M. Biddle, Jr.,* with him *Russell B. Updegraff,* for appellee.

OPINION BY HIRT, J., April 16, 1947:

The master recommended a divorce on the charge of indignities; exceptions to his report were dismissed and the lower court entered a decree on that ground.

The parties became interested in each other through membership in a "corresponding club", operated by a matrimonial agency. They were married in 1932 but did not establish a common home until three years later. Libellant had been thrifty and, entirely out of his own wages as a railroad employee, had bought three residence properties in Lemoyne and a double house with appurtenant land in New Cumberland. In 1934 he transferred his title in the New Cumberland real estate and in one of the Lemoyne properties to himself and respondent as tenants by entireties. Both parties have continued to live in the New Cumberland house, though occupying separate rooms since the filing of the libel.

Libellant's employment with the railroad began each day at 4 P. M. In his free time he, himself, did the work of making repairs and otherwise maintaining and improving his properties. Beginning in 1938 respondent attached improper motives to libellant's frequent trips to Lemoyne. And wholly without reason or foundation in fact, she began to accuse him of improper relations with the wives of two of his tenants in Lemoyne. Jealousy, born of suspicion, developed into a ruling passion and she became obsessed with the illusion that her husband was unfaithful to her. She frequently followed libellant to Lemoyne; she spied on him there and drew false inferences from his conduct in relation to his

property and his tenants. On one occasion she entered one of his houses in Lemoyne. She found libellant there and in the presence of the tenant accused the tenant's wife of intimacy with her husband. This tenant appeared as a witness for libellant before the master. Respondent went unannounced, into the house of another tenant expecting to surprise libellant in an act of intimacy with the tenant's wife. He was making a plumbing repair in the bathroom. On still another occasion, in January 1942, when libellant went to Lemoyne to collect his rents he found his wife waiting for him in front of this same house. In his presence she broke the glass panel of the front door and thus gained entrance to the house. Without provocation she drove the wife-tenant from the house and assaulted her by pulling her hair and striking her on the head. The husband of this woman, then, through a justice of the peace, warned her by letter to keep away from his house. Respondent's obsession of imagined infidelity was the subject of frequent arguments between the parties. She taunted him daily. On one occasion she became violent and struck him with the leg of a table. The police were called in an attempt to pacify her on this and on one other occasion. No one living in Lemoyne or elsewhere was produced at any one of the hearings before the master whose testimony can be accepted as evidence of immoral conduct of libellant. We have examined respondent's testimony and that of her witnesses with care and we are unable to find any credible evidence supporting her charge of infidelity. Respondent was also guilty of other misconduct, induced undoubtedly by her mistaken belief that her husband was unfaithful to her; she assaulted him, and frequently, over a long period of time, called him opprobrious names when accusing him, both publicly and privately, of improper relations not only with the wives of his tenants but with other women as well. We are supported in our conclusions by this discussion in the opinion of the lower court: "The Master herein has concluded that the Libellant and his witnesses are worthy

of credit and, under the principles set forth in Smith v. Smith, 157 Pa. Superior Ct. 582, 43 A. 2d 371, we must give his conclusions upon that factor, based upon his observations of the appearance and demeanor of the witnesses, the fullest consideration. In the present case, too, the Master, who is one of the ablest members of this bar, is personally acquainted with the parties and most of the witnesses. This is an added reason why we must give his conclusion upon the credibility of the witnesses the fullest consideration." These considerations influenced us as well as the lower court in appraising the testimony. We find ourselves in agreement also with Judge REESE's comment: "It is true that the libellant, on occasions, participated in vigorous arguments with his wife, during which he was not careful in his choice of language, but, in our opinion, these arguments largely grew out of his anger and protestations when his wife falsely accused him with improper relations with other women." A husband is not strictly accountable for language induced by his wife's false accusations of serious misconduct. The profane language used by the libellant and the opprobrious names he called his wife when charged with philandering, does not relieve her from responsibility for repeated indignities amounting to a continuous course of conduct beginning in 1938.

The fact that libellant did not leave his wife and their common abode does not raise a serious question in this case as to the severity of the treatment to which he was subjected. One may be entitled to a divorce on the ground of indignities without leaving the common abode. *Fawcett v. Fawcett,* 159 Pa. Superior Ct. 185, 48 A. 2d 23. Libellant withdrew to separate quarters in the house and was justified in remaining under the circumstances. The house in which they lived had been bought and paid for by him, and was still his though his wife had equal rights in the property under the title in them by entireties.

Decree affirmed.