Priest *v.* Priest, Appellant.

Argued October 2, 1947. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Melvin Alan Bank,* with him *John Pemberton Jordan,* for appellant.

No one appeared or filed a brief for appellee.

OPINION BY HIRT, J., March 8, 1948:

The master found the charge of indignities sustained by the proofs and recommended a divorce on that ground. The lower court adopted the findings and recommendation of the master and entered a decree of divorce. We have considered the testimony de novo and have passed upon its weight, as we are bound under the law. With due deference to the master, who saw and heard the witnesses (*Fishman v. Fishman,* 134 Pa. Superior Ct. 217, 4 A. 2d 543) we find ourselves in disagreement with him. Our conclusion on the merits is that the charge of indignities has not been sustained. The decree will be reversed.

The parties were married on November 20, 1916. The separation occurred on August 18, 1944, when libellant left the respondent. Libellant is about 50 years old and the respondent 52. They have two daughters and one son, all adults. The master based his recommendation on two findings, viz.: that respondent habitually called the libellant opprobrious names, and repeatedly accused him of marital infidelity.

Notwithstanding the "belligerent" attitude of the libellant as a witness and his attempt to control the scope of his examination, the master accepted his testimony as true. We do not agree with that estimate of libellant's credibility. When pressed, he was evasive and his testimony was self-contradictory and inconsistent in a number of material respects. The master accepted the testimony of libellant's sister, also, who clearly was prejudiced. On the other hand he was unable to believe the testimony of the respondent, corroborated as it was, by her two daughters. Her testimony in the main, as well as that of the daughters, has the ring of truth. She frankly admitted that she had accused the libellant of infidelity throughout the years of their married life but she denied calling him opprobrious names except such as implied philandering or adulterous conduct. Her testimony refuted completely other alleged acts of indignities (the master must have so found for there is no reference to them) and we find that the charge of name-calling has not been sustained by credible evidence. Libellant's association with a number of women was not denied but the reasons which he advanced for going out with them are not impressive. And we cannot accept his naive protestations of innocence in the face of admitted facts and circumstances which provoked the charges of marital infidelity.

The testimony in this case was taken at five hearings over the period of a whole year. The record is a history of their married life in much detail. It is significant that in more than 450 pages there is not a single word nor testimony of an act of libellant which indicates that he ever had any real affection for his wife. The marriage from his viewpoint apparently was merely one of convenience. Respondent kept house for him and with little in return bore and reared his three children. He concedes that she was a good mother and a good cook.

Libellant took his wife to a vaudeville or picture show occasionally, but only in the early days of their

marriage. He admits that he hasn't taken her anywhere in the last 8 or 10 years. It is difficult to believe, but it was proven without contradiction, that he spent only a few evenings at home during his whole married life and then only when he was ill. He was commendably loyal to his mother who lived in the neighborhood; he went to her house every evening and performed some service for her. But what he did for his mother does not explain his failure to return to his home at reasonable hours. Interests other than his mother account for his habitual absence from his home until after midnight. Her death three years before the hearings in the case did not change his conduct.

Early in his married life libellant was intimate with one Florence Connelly. He admits that she demanded money from him because of her pregnancy. We are unable to accept his explanation of the affair, in which he disclaimed responsibility for her condition. He also admits having "gone out" with one Mary O'Donnell over a period of years although he said that they were always in the company of others. For a time he carried her photograph in his wallet for a reason given by him which also is difficult to accept. Throughout his married life he was observed in the company of women other than his wife on a number of occasions. Of recent years he has been a small contractor and builder, and he considered it "natural" to invite a woman client to go out to dinner or to a movie with him. Libellant admits his frequent association with one Rita Oehlrich since 1930. He contends that she has been helpful to him in his business and that accounts for his interest in her. He admits however that he has been in her house often and has seen her every week for a year or more. In November 1943 title to a farm in Upper Montgomery was taken in her name. Libellant admittedly made the down payment. He alone was present at the settlement and it is a fair inference from the testimony that he made the whole of the remaining cash payment. It is also reasonable to

believe that he took title in the name of Rita Oehlrich not only because of his marital problems, but also because of a personal interest in her. He has made extensive repairs to the buildings and has employed a farmer to run the farm. He visits the farm several times each week and spends his week ends there in company with Miss Oehlrich and her mother. He pays the taxes and other carrying charges including interest on a mortgage. But he says these payments are made in lieu of rent under a verbal lease with the owner. He also furnished the farm house. And during his unemployment in 1943 when he did not supply his wife with enough money to run the house, he nevertheless paid at least $219.50 on account of the purchase of furniture for the house on the farm. Evidence to this effect, ruled out by the master, was clearly competent and relevant. He admits that he intends to live on the farm permanently.

Libellant concedes that during the last year or two of his married life the indignities of which he complains were few because he and his wife were not speaking to each other. And he attempts to explain his tolerance of respondent's alleged conduct up to the time of his leaving on the ground that he was interested in raising the children and did not want to break up the home until they had reached maturity. Again libellant is presumptuous in inviting belief in the incredible. He never was anything except critical of his children; he had little part in their upbringing and he never established a sympathetic relationship with them.

Our conclusion is that libellant left the respondent because of plans for the future involving the farm in Montgomery County and also the woman who holds title to it. We do not impute immoral conduct to her. But libellant's relations with her and with other women and his neglect of his family certainly justified respondent in the belief that he was unfaithful to her. Respondent was a bit harsh in some of the names which she called her husband, imputing adulterous conduct to him, but

we must not be too critical of her language since there was justification for it. Accusations of marital infidelity by a wife, which are invited by the conduct of the husband, are not grounds for divorce on a charge of indignities, regardless of their truth, if the circumstances reasonably justify the wife's belief that her husband has been unfaithful to her. *Philo v. Philo,* 154 Pa. Superior Ct. 563, 36 A. 2d 833.

Moreover, libellant was not an injured and innocent spouse. By his studied neglect throughout the years he was chargeable with misconduct approaching indignities. And his repeated association with other women, even though not adulterous, was evidence of personal indignities. *Macormac v. Macormac,* 159 Pa. Superior Ct. 378, 48 A. 2d 136; *Lowe v. Lowe,* 148 Pa. Superior Ct. 439, 25 A. 2d 781. Whether his conduct would entitle respondent to a divorce, if she were the libellant, we are not called upon to decide in this appeal.

Decree reversed and libel dismissed.