## Arnold, Appellant, *v.* Arnold.

Argued March 13, 1950. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*E. M. Biddle, Jr.,* with him *Hyman Goldstein,* for appellant.

No appearance was made nor brief submitted for appellee.

OPINION BY ROSS, J., July 20, 1950:

In this uncontested divorce action, the parties were married on November 25, 1936 and resided together until January 1945, when the wife left the home, and on August 24, 1948 filed her complaint seeking a divorce on the ground of indignities. The master recommended that the divorce be refused, exceptions to his report were dismissed by the court below, the complaint dismissed, and the plaintiff-wife took this appeal.

To support a decree in divorce indignities must consist of a course of conduct which renders the condition of the innocent party intolerable and his or her life burdensome, and they must be shown by evidence from which an inference of settled hate and estrangement may be deduced. *Davidsen v. Davidsen,* 127 Pa. Superior Ct. 138, 191 A. 619; *Monaco v. Monaco,* 160 Pa. Superior Ct. 117, 50 A. 2d 520; *Bock v. Bock,* 162 Pa. Superior Ct. 506, 58 A. 2d 372.

According to the testimony of the plaintiff, the course of conduct of which she complains began about two months after the marriage and continued until she left the home in January 1945. If her testimony is credible, she showed a course of conduct that would entitle her to a divorce but we shall discuss her credibility later. She had some slight corroboration but her case must

stand or fall on her own testimony. However, a decree in divorce may be supported by the testimony of the plaintiff alone. *Kett v. Kett,* 117 Pa. Superior Ct. 236, 177 A. 509.

The plaintiff is a registered nurse and was employed as such prior to the marriage. For about two years after the marriage she did not practise her profession but then went to work at the Carlisle Hospital, where she is still employed.

According to her testimony, her husband had a "violent temper" and was always calling her vile names and accusing her of running around with other men; that he slapped her numerous times, in 1944 threatened to kill her, choked her—which we shall also discuss later— and that his treatment affected her nerves so that she required hospitalization for a nervous condition. She testified relative to various personal assaults which, although apparently not serious, yet inflicted bruises and marks on her body. According to her, the defendant continuously called her vile names and accused her of infidelity when they were alone and also in the presence of others. She testified that because of her work as a nurse at the Carlisle Hospital her hours of returning home at night were uncertain and irregular and consequently when she did return to the home he immediately accused her of having been with other men.

The master recommended that the divorce be refused because he was convinced that the "plaintiff fabricated her case for the purpose of accomplishing a severance of her marriage contra to the established law of the Commonwealth . . .", stating that he based his conclusion that the plaintiff's testimony is incredible and untrue on her "gross exaggerations" and her "appearance and demeanor" on the witness stand.

It has been long established in our review of divorce cases that it is our duty to examine the evidence de novo and to make our own independent finding of the facts

(*Celia v. Celia,* 164 Pa. Superior Ct. 569, 67 A. 2d 447) and although the findings of the master or the hearing judge are not binding upon us they are to be given the fullest consideration, particularly where credibility of witnesses is concerned (*Seder v. Seder,* 164 Pa. Superior Ct. 372, 64 A. 2d 668) since he has the advantage of seeing and hearing the witnesses, an advantage which, of course, is denied to us. Here, after applying the tests of credibility as so ably set forth by Judge RENO in *Smith v. Smith,* 157 Pa. Superior Ct. 582, 43 A. 2d 371, we have not been able to find in the transcript of the testimony any solid ground which justifies a refusal to accept the master's finding relative to credibility and his recommendation that the divorce be refused. On the contrary, a reading of the record would seem to strengthen the accuracy of the master's appraisal of the testimony.

As one illustration, plaintiff testified, relative to a choking incident, that the defendant "came toward me with his two thumbs together. . . . The only place I had to go was in a corner. He had me in the corner and started choking . . . I was starting to black out . . . Things were beginning to get hazy", and then in response to the question "What did you do?" she answered, "I looked him straight in the eye and I said 'You are going to be the sorriest man in the world. You are the one who is going to pay for it' ". The able and distinguished counsel for the plaintiff argues that she was referring to what she did and said *after* the alleged choking but we do not so construe her testimony. As we read it, she testifies in effect that although about to "black out", she was able to look her husband straight in the eye and threaten him, a highly incredible story.

However, there is another and stronger illustration of the incredibility of the plaintiff's testimony. She testified that "there was a girl that I had at my home helping me on several occasions cleaning. I suppose you would

call her a maid. My husband in my presence several times, in my presence, he embraced her. She was an attractive girl. I always hate to talk about these things but he would feel her breasts and other parts of her body and after I had seen these things I never said anything . . ." This is also an unbelievable story and casts doubt upon the veracity of the plaintiff and upon the rest of her testimony.

The plaintiff has the burden of establishing her right to a divorce by evidence that is clear and convincing (*Fawcett v. Fawcett,* 159 Pa. Superior Ct. 185, 48 A. 2d 23) and it is our independent judgment from a reading of the record in this case that the plaintiff has not sustained her allegation of indignities.

The decree of the court below dismissing the complaint is affirmed.