Thornton *v.* Thornton, Appellant.

Argued November 13, 1950. Before HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ. (RHODES, P. J. and GUNTHER, J., absent).

*Paul N. Barna,* for appellant.

*Thomas L. Anderson,* for appellee.

OPINION BY HIRT, J., January 12, 1951:

The parties were secretly married in 1936. They were then under age and they did not live together as man and wife until two years later following remarriage in a church ceremony. The separation occurred on August 1, 1947, when the plaintiff left his wife and their two children in their common home. In May, 1948, plaintiff brought this action in divorce charging indignities to his person. From the testimony the master found that the plaintiff in seeking a divorce was not an injured and innocent spouse and recommended a dismissal of the libel on that ground. The lower court however sustained exceptions to the master's report and entered a decree in divorce. Notwithstanding our respect for the opinion of the court below we are convinced from our independent consideration of the record in its entirety, that plaintiff has not sustained the charge of indignities by that clear and convincing proof essential to a decree in divorce. The cumulative result of the hearings before the master, throughout the period of a whole year, is a cumbersome record replete with inconsequential if not wholly irrelevant testimony. Only a few of the thirty charges of plaintiff's bill of particulars tend to support the charge of indignities. We will refer to them briefly.

Some time in 1940 following the failure of plaintiff's first business venture in Monessen the parties went to live with his parents on their farm in the Ginger Hill district. The two families continued to

live together there and later in Monongahela. Even now the defendant with her children and plaintiff's parents live under the same roof in adjoining apartments of a double house in Monongahela. It is there that the parties were living at the time of the separation. Defendant and her mother-in-law have had, and still have, regard for each other, even since the plaintiff severed the family relationship.

There is little foundation for plaintiff's complaint that his wife refused to do the laundry work and otherwise care for the household over a period of years. The fact that his wife did not perform certain of her household duties was because of an agreed division of the housework, from time to time, between her and plaintiff's mother throughout the period. Plaintiff's criticism of his wife in this respect comes with ill grace and is wholly unwarranted. At Ginger Hill the plaintiff went into the chicken business with a flock numbering 100 or more. It was his wife who assumed the responsibility for their care and the sale of dressed poultry and eggs. In addition she assisted plaintiff in his business and she cared for her household and her child in the remaining time available, as best she could.

We find no credible evidence that the defendant attempted to procure an abortion, when she became pregnant in 1945 with her second child, or that she purposely failed to make preparation for the birth of the child. She was taken unawares by premature labor according to her testimony and she is corroborated in that respect to some extent by the circumstances. It was planned that she would take a month off from her work as a clerk in one of the plaintiff's grocery stores. But she obviously misjudged the time of her delivery for she worked as usual at the store up to the day before the child was born on May 10, 1946. The birth of the child in the home was not from choice but because of insufficient warning in time for defendant to get to

a hospital. She had been left alone in the house with a six-year-old child on that day and there was no alternative.

Plaintiff's serious charge is that his wife accused him, falsely he maintains, of numerous intimacies with other women, and that she published these accusations abroad in many quarters of the community to his injury in his business and otherwise. This conduct of the defendant fails to support the charge of indignities for the reason that these imputations of her husband's infidelity were founded on fact in at least one instance and were justifiably invited by his conduct with the other women involved. Plaintiff although inordinately industrious, found his recreation in night clubs or road houses and frequently in company with various women other than his wife. Plaintiff's witness Libero Tremonti admitted going out with him on drinking parties about twice a month and the evidence clearly indicates that they entertained women on some of these occasions. The plaintiff did not seriously deny this practice and Tremonti when asked if he and plaintiff had been out with women, answered: "Not that I remember of". He also could not "remember" if he and plaintiff took women on a specified occasion to a night club known as the Balconades. There is also some evidence that plaintiff and Sam Tabish went to night clubs together and entertained women there. A Miss Merwin testified, though an unwilling witness, to association with plaintiff, who posed as a single man, at a night club known as Paydays. Plaintiff's more serious misconduct was with one of his clerks who shall remain anonymous here. He was frequently in her company and the testimony in our view convicts him of improper relations with her. There is in evidence an ardent note written by this woman to the plaintiff which indicated her infatuation with him. And the fact that he carried the note in his wallet rebuts her testi-

mony that the note was intended for a "Jim" other than plaintiff. The defendant was justified in accusing her husband of intimacies with this woman. Defendant reported her suspicions as to the misconduct of Tremonti and Tabish, in company with plaintiff, to their wives. But the fact that she was unable to convince these wives of the aberrations of their husbands, is beside the point. And it is unimportant also that some of the charges of plaintiff's misconduct may not have been founded on fact. Imputation of intimacies with certain named women, on suspicions which later may appear to have been groundless, does not cancel out the effect of proven infidelity on other occasions. And a husband cannot complain of even unfounded accusations of infidelity when his conduct reasonably invites the charges. Certainly unfounded accusations of infidelity of a libellant may constitute indignities warranting a decree of divorce. *Kimmel v. Kimmel,* 160 Pa. Superior Ct. 538, 52 A. 2d 245. But to amount to such indignities "The charge not only must be false, but it must have been made without reasonable ground for believing it to be true. For if made in good faith and upon suspicion reasonably aroused, it is not an indignity", justifying a decree in divorce. Freedman on Divorce, §315. Indignities provoked by a libellant are not ground for divorce. *Monaco v. Monaco,* 160 Pa. Superior Ct. 117, 50 A. 2d 520.

Plaintiff, moreover, has little ground for complaint as to the extent of his wife's cooperation in furthering his interests. After one business failure plaintiff opened a small grocery store in Elrama near Monongahela and later acquired a similar store there and a third in nearby Finleyville. He did the buying necessary to maintain stocks of goods in the stores and in general supervised the business, but the actual operation of each store was in charge of others, for the most part hired help. Defendant worked steadily as a clerk in

one of the stores over a period of more than four years and plaintiff's charge that she was intent upon injuring him in his business is completely rebutted by her continued loyal service in that respect. Even since the separation and after plaintiff brought this action she continued to work for him in one of the stores three days each week until June 1948, and wholly without pay as theretofore.

During the period of three months after plaintiff abandoned his home defendant went out for the evening on three occasions with one Robert Goetz who had been a friend of the family. Another couple accompanied them except on the last occasion. They went to taverns for entertainment but even the testimony of the unchivalrous Goetz in his effort to be helpful to the plaintiff does not charge her with serious misconduct.

This is a case in which the credibility of the parties, in an unreconcilable conflict of testimony is an issue of controlling importance. Our estimate of plaintiff's testimony is that it is not worthy of belief. In rebuttal he was needlessly categorical in denying every statement of his wife in her testimony, however obviously true and even though immaterial. Two incidents demonstrate his unreliability. In June 1948, after bringing this action he returned to his home in an attempt to persuade his wife "to give" him a divorce. When she refused to cooperate and indicated that she would contest the action he gave her a beating. He denied that he was there or that he assaulted his wife. His presence was proven on that occasion and defendant's body immediately thereafter showed marks of the beating. On a later occasion he came to the house and threatened his wife with a gun. It was only the screams of his children that made him desist. Someone other than his wife called the police and he was arrested.

In spite of the charge of pointing a firearm arising from his conduct with a gun on that occasion and his subsequent conviction of it by a jury on his trial in quarter sessions, he denied the incident in this proceeding.

Plaintiff clearly, we believe, has failed to sustain the charge of indignities. In any view, as the master appropriately found, he is not an innocent and injured spouse and on that ground alone is not entitled to a divorce.

Decree reversed and complaint dismissed.