## Potter *v.* Potter, Appellant.

Argued November 15, 1950. Before HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ. (RHODES, P. J., absent).

*John R. Bentley,* for appellant.

*Thomas Park Shearer,* for appellee.

OPINION BY RENO, J., January 12, 1951:

Plaintiff was granted a divorce on the ground of indignities, and his wife appealed. Our decision turns upon the credibility of the witnesses, and as the trial judge, sitting without a jury, found for plaintiff, his conclusions cannot be lightly set aside. *Weber v. Weber,* 156 Pa. Superior Ct. 6, 39 A. 2d 144; *Gerster v. Gerster,* 166 Pa. Superior Ct. 105, 70 A. 2d 429; *Arnold v. Arnold,* 167 Pa. Superior Ct. 211, 74 A. 2d 524. An independent and careful review of the record has engendered the conclusion that Judge KENNEDY's judgment that the weight of the credible evidence favors plaintiff is sound, and the decree will be affirmed.

This couple married before the girl finished high school and was only 16 years old. Plaintiff, five years her senior, was hardly earning a sufficient salary to support himself. Perhaps if they had been left to lead their own lives without well-intended, but misguided, parental domination their marital relationship might not have culminated in the divorce court.

Their difficulties were only partially due to defendant's immaturity but mostly because of her inability to live within her husband's meager earnings. They constantly bickered over finances and were continually in debt as a result of buying on credit. He complains that defendant failed and neglected to provide proper meals, was unable to care for the house, constantly called him vile and opprobrious names, belittled his rank of cor-

poral in the army and ridiculed his inability to obtain a commission. She falsely accused him of running around with women while in the service, and that they wrote letters to him. During their first year of married life defendant threw a cast iron skillet at her husband which missed him but broke the door and put a hole in the linoleum. On one occasion she upset the table and threw cups and saucers at him while he was holding the baby. Another time she "whaled" a beer glass at him which hit him in the back. He testified she frequently tried to scratch his eyes out and threatened to kill him. At least once she attacked him with a butcher knife. During defendant's pregnancy she told her husband she never wanted the baby and attempted to bring about a miscarriage. She also said that some day she would tell him who was the real father.

For about a year while plaintiff was in the army defendant lived with him in a rooming house outside the camp and secured employment in a department store. Several times he obtained overnight leave and arrived home unexpectedly to find his wife was out. When he left at five in the morning she had not returned. Her explanation was that she had been taking inventory at the store, or had gone to a show with some girls.

Twice the parties separated. The first time, about a month after they were married, defendant put plaintiff's clothes out in the hall, and he stayed away overnight. The second occasion in 1946 resulted from an altercation at the gasoline service station which the parties owned. Plaintiff testified his wife wanted all the receipts from the operation of the station and her mother and brother demanded he leave and give her the money. Plaintiff finally got away after all three physically attacked him and called the police. After this incident he remained away for several months.

Their final separation was in August 1948, following which defendant and her brother sought to have plaintiff arrested for abandonment while he was at work as a trolley motorman. The constable testified he refused to agree to such an arrangement and sent them elsewhere.

Defendant denied most of the complaints, and it is obvious from her testimony that the lack of money was the root of her trouble. There was considerable conflict concerning the source of the funds invested in the service station, and neither party's version is entirely credible. However, such facts are irrelevant to the charge of indignities. Standing alone, plaintiff's testimony and that of his witnesses to the effect that the wife called his mother vile names, made lewd and indecent insinuations against his sister, an army nurse, and accused his father of insanity would not warrant a divorce on the ground of indignities to the person; but they are a significant part of the entire picture. Cf. *Friess v. Friess,* 156 Pa. Superior Ct. 38, 39 A. 2d 151.

Undoubtedly plaintiff is not entirely without blame for failure to adjust their marital differences. But his conduct was not such as to justify the indignities to which he was subjected, and we find he is the injured and innocent spouse. *Bliss v. Bliss,* 167 Pa. Superior Ct. 252, 75 A. 2d 1. The credible evidence establishes a course of conduct on the part of defendant manifesting a hatred of and estrangement from her husband expressed in indignities to his person rendering his condition intolerable and life burdensome, and justifies the granting of a divorce. *Seder v. Seder,* 164 Pa. Superior Ct. 372, 64 A. 2d 668; *Cutter v. Cutter,* 165 Pa. Superior Ct. 103, 68 A. 2d 192.

Decree affirmed.