## Horton *v.* Horton, Appellant.

Submitted November 19, 1951. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Harold S. Hampson,* for appellant, submitted a brief.

*G. Henry Nicholson,* for appellee, submitted a brief.

OPINION BY RENO, J., January 17, 1952:

Plaintiff was granted a divorce on the ground of indignities. The wife's appeal questions whether he was the "injured and innocent spouse" within the meaning of The Divorce Law of May 2, 1929, P. L. 1237, §10, 23 P.S. §10. The answer turns upon the credibility of the parties and their witnesses. The case was heard by a judge without a jury, and the trial judge found defendant's testimony incredible and unworthy of belief. His conclusion as to which of the parties is to be believed will not be lightly disturbed. *Spence v. Spence,* 167 Pa. Superior Ct. 248, 74 A. 2d 495; *Bliss v. Bliss,* 167 Pa. Superior Ct. 252, 75 A. 2d 1.

The parties were married in 1921 and shortly thereafter plaintiff charges his wife told him he "was no good" and that he "wasn't as good as her first husband." She frequently called him opprobrious names. On one occasion when they were entertaining friends at home the wife of defendant's nephew was found on the bathroom floor. In the presence of friends and relatives plaintiff picked her up and as he carried her to the door defendant struck him on the side of the head with a flatiron. Defendant further exhibited her unfounded jealousy by telling husband's sister that he was running around and drinking two-thirds of the time. She frequently made similar accusations to plaintiff. Mrs. Liebel, a widow, to whom plaintiff was accused of showing too much attention, testified that

three or four times a week defendant told her plaintiff was "running around with other women." During the past year the parties have seldom spoken and especially at meal time the plaintiff received the "silent treatment." When he would come home from work defendant called the dog to greet him. Plaintiff's witnesses, including his mother, who lived with the parties, testified they heard defendant call him vulgar names. His mother also stated that she was present when defendant gave her son "a crack over the head with a flat-iron." She testified she heard plaintiff on one occasion request his wife to come to the living room to meet his friends and defendant's reply was "I don't want to meet your damn friends."

Much of the testimony involved plaintiff's association with Mrs. Liebel. She and her husband, prior to his death, were close friends of the parties. In fact defendant frequently suggested plaintiff stop in on a Sunday morning to chat with Mrs. Liebel. Defendant's subsequent display of jealousy toward this woman is merely indicative of her general suspicious attitude. True, plaintiff saw Mrs. Liebel almost weekly but there is no evidence their relationship was improper.

This is not the type situation which confronted us in *Priest v. Priest,* 162 Pa. Superior Ct. 232, 57 A. 2d 437, where the husband's conduct invited his spouse's accusations of marital infidelity. Continuous unfounded accusations of infidelity when accompanied, as here, by other degrading or humiliating conduct persisted in sufficiently long is enough to make out a case of indignities, *Silfies v. Silfies,* 168 Pa. Superior Ct. 421, 79 A. 2d 130, provided the accused spouse's conduct does not reasonably lend support to such allegations. *Blose v. Blose,* 163 Pa. Superior Ct. 322, 61 A. 2d 370; *Thornton v. Thornton,* 168 Pa. Superior Ct. 391, 77 A. 2d 691.

Defendant's testimony read in the printed record, impresses us as incredible. She admits most of their

trouble was caused by plaintiff's drinking, although he was steadily employed by the borough for 18 years, but denies she ever called him a "damn drunk." When asked if she referred to her husband in the presence of his friends and relatives as "no good" and "useless" her reply was, "I don't recall as I ever did." In describing the episode with the flatiron defendant testified she seized it in self defense and if her husband "got hit on the head it was his own fault", but she did not hit him. Defendant charged that for a year and a half she washed her husband's underwear after finding it in a blood-stained condition. She even showed it to her sister on one occasion and also to Mrs. Liebel, whom she indirectly blamed. Defendant and her witnesses attempted to infer a meretricious relationship between the husband and Mrs. Liebel. However there is not a scintilla of credible evidence to show plaintiff's association with the widow was sufficient provocation for defendant's conduct. *Dyer v. Dyer*, 166 Pa. Superior Ct. 520, 72 A. 2d 605; *Wilson v. Wilson*, 163 Pa. Superior Ct. 546, 63 A. 2d 104. It is not necessary that plaintiff be wholly without fault, *Potter v. Potter*, 168 Pa. Superior Ct. 402, 78 A. 2d 42, but the record is devoid of any substantial evidence to prove him guilty of such improprieties as to justify defendant's conduct or from which we could conclude he is not the injured and innocent spouse. *Megoulas v. Megoulas*, 166 Pa. Superior Ct. 510, 72 A. 2d 598.

The fact that the parties continued to reside together under the same roof was not raised. One may be entitled to a divorce on the ground of indignities without leaving the common abode. *Kimmel v. Kimmel*, 160 Pa. Superior Ct. 538, 52 A. 2d 245. The parties have occupied separate rooms since January 28, 1948 and have not since then cohabited as man and wife.

Decree affirmed.