Orsuto *v.* Orsuto, Appellant.

Argued March 27, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Samuel Halbert,* for appellant.

*Herman A. Becker,* for appellee.

*M. B. Elwert,* Master, in propria persona.

Opinion by Hirt, J., October 1, 1952:

The lower court, in effect, adopted the findings and the recommendation of the Master and entered a decree of divorce on the ground of indignities. Without doing violence to the rule that the report of a Master, who has seen and heard the witnesses, is entitled to the fullest consideration, we are obliged to reverse the decree. The controlling issues are not dependent upon estimates of the credibility of witnesses but rather on the conclusions to be drawn from facts established by indisputable evidence.

Following their marriage in March 1929 the parties made their home with defendant's parents at 616 Sears Street in Philadelphia. Plaintiff left her husband and lived with her parents for nine months in 1936, because, according to her testimony, he refused to go to work and provide a home separate and apart from that of his parents. She however returned to the home which she had left, when his parents became bedridden and needed her help. Apparently she abandoned her demand for a separate apartment, for she continued to live in the same house until the death of both of his parents in 1942 and thereafter until she finally left her husband on March 4, 1950.

Defendant's parents by will devised their home at 616 Sears Street, together with three other modest row houses to the defendant. While living with plaintiff defendant did not work steadily at his trade as a carpenter but he had made it a practice to turn over his entire earnings to his wife. And after acquiring the four houses from his parents he put the title to the properties in his name and that of his wife by entireties.

Plaintiff complained of abnormal sexual demands made upon her by defendant over a period of years, but the testimony indicates that she was able to control his demands in that respect. The seeds of discord which

ultimately broke up the home were sown in 1942 when defendant employed John Mattioli, a building contractor, to remodel the houses. Mattioli and his wife thereupon became frequent visitors in the Orsuto home and Mattioli often was there alone. The charges upon which plaintiff principally relies are thus stated in her bill of particulars: "Commencing in 1948, and continuing during the course of their cohabitation together the defendant, without any cause for such statements, falsely [in the presence of others] accused the plaintiff of committing adultery" which "false accusations were coupled with obscene, indecent, profane and vulgar language and were made without any apparent cause except an unfounded jealousy" and "Commencing in 1948 . . . the defendant has repeatedly and continually inflicted physical violence upon the person of the plaintiff". There is credible evidence of occasional violence without serious physical injury and there can be no doubt that beginning early in 1948 the defendant openly charged his wife with immoral conduct in language which could not be misunderstood. Defendant had just cause for his aspersions charging plaintiff with immoral conduct. Plaintiff's testimony as to physical abuse relates to isolated incidents, provoked by her improper conduct, which do not add up to a course of conduct amounting to indignities as contemplated by our divorce law. *Monaco v. Monaco,* 160 Pa. Superior Ct. 117, 50 A. 2d 520.

These are the circumstances which ended in the disruption of the home of the parties: The remodeling of the houses on Sears Street continued into 1945 and John Mattioli was in the home of the parties every day. Mattioli and this plaintiff were often alone together in his car. In May 1947 Mattioli took plaintiff with him to Oaklyn in Camden County, New Jersey. There in her presence he negotiated the purchase of a vacant

lot from the owner. The circumstances indicate that they there posed as husband and wife. Plaintiff testified that in response to the owner's inquiry, she stated that her name was "Mildred". She did not give her name as Mildred Orsuto. The conveyance dated June 13, 1947, accepted by Mattioli's attorney, who was present at the settlement, named "John Mattioli and Mildred Mattioli his wife" as the grantees of the land. Mattioli's lawful wife, Rosario, learned of the conveyance in their names through a tax notice which came to her home. In a jealous rage she went to Sears Street and standing in front of the home of the parties shouted at the plaintiff: "You are in a deed with my husband as husband and wife". And with the most vulgar epithets she accused plaintiff of promiscuous immorality and with breaking up her home. Defendant's suspicions were thus aroused and later were confirmed when on trailing Mattioli's automobile at night he observed his wife and Mattioli in amorous embrace and on one occasion found them together in a cafe. It is then that he accused his wife of adultery, frequently and in the presence of others, and he began occasionally to abuse his wife physically.

Some time after the above conveyance plaintiff along with John Mattioli as "Mildred Mattioli, his wife" executed a deed and as such acknowledged the same before a notary public with the intention of transferring title to the land to John Mattioli alone. This undoubtedly was done to support the plaintiff's contention, when her relationship with Mattioli became known, that her name appeared in the deed to her along with Mattioli, by mistake. The possibility of mistake is completely rebutted by the circumstances. The sales agreement from the owner of the land, preceding the conveyance, named Mattioli and "Mildred Mattioli his wife" as the purchasers. And it is significant, in view

of the contention of mistake, that neither John Mattioli nor the grantor of the land was called as a witness to testify as to the identity of the persons to be named as grantees in the deed. From the fact that plaintiff did not call either of these witnesses, we are justified in drawing the inference that their testimony if called would have been unfavorable to her. *Sigel Estate,* 169 Pa. Superior Ct. 425, 429, 82 A. 2d 309; *Hall et al. v. Vanderpool,* 156 Pa. 152, 26 A. 1069. Moreover, there is impressive testimony rebutting plaintiff's allegation of mistake, in an affidavit of John Mattioli which the Master improperly excluded. The insurance company, prior to insuring the title to the New Jersey land, required an affidavit as to the marital status of the grantees. In order to procure insurance of the title to the land in both the name of himself and the plaintiff, John Mattioli made affidavit before a notary public on June 24, 1947 "that he and his wife, the said Mildred Mattioli are presently married to each other, which marriage is the only one ever contracted by either one of them". No question of hearsay was involved with respect to the affidavit since the truth of the matters contained in it was not sought to be established by its admission. If the affidavit had been made by the plaintiff there can be no doubt as to its admissibility, bearing on her intent or state of mind. *Widdis v. Collingdale Millwork Co.,* 169 Pa. Superior Ct. 612, 615, 84 A. 2d 259; *Commonwealth v. Marshall,* 287 Pa. 512, 522, 135 A. 301. And since plaintiff was in privity with Mattioli in securing the conveyance in both of their names as husband and wife, and plaintiff does not contend that she alone, and not Mattioli, was the victim of mistake, his ex parte affidavit was competent evidence of her state of mind, refuting the inference of mistake on her part. Cf. Am. Jur., Evidence, §958; *Wallace v. Dorris,* 218 Pa. 534, 540, 67 A. 858.

After leaving her husband, plaintiff took advantage of his temporary absence from his home on March 2, 1950, and removed all of the furniture from the house to an apartment which she had rented. Since the separation she has openly gone about in company with John Mattioli both by day and by night under circumstances which justified defendant's continued suspicions of immoral conduct. The Master did not consider this testimony relevant and the lower court made no reference to the undisputed facts as to her frequent association with Mattioli since the separation.

We have held that even adultery committed by a plaintiff, after the right to a divorce for indignities has accrued, is not a cause for refusing a divorce. *Clark v. Clark*, 160 Pa. Superior Ct. 562, 52 A. 2d 351. But that principle has application only where the alleged immoral acts are not connected in any way with the grounds for divorce in the complaint. *Bock v. Bock*, 162 Pa. Superior Ct. 506, 512, 58 A. 2d 372. The principle of the *Clark* case may not be invoked here, for the intimacies of plaintiff with Mattioli after the separation are relevant for the purpose of shedding light on her similar behavior before the separation on which defendant relies in justification of his treatment of her. *McMahon v. McMahon*, 167 Pa. Superior Ct. 51, 74 A. 2d 718.

In our view, defendant's accusations of infidelity were made in good faith and were provoked by his wife's conduct and therefore do not constitute indignities justifying a decree of divorce. *Kranch v. Kranch*, 170 Pa. Superior Ct. 169, 84 A. 2d 230. To amount to indignities " 'The charge [of infidelity] not only must be false, but it must have been made without reasonable ground for believing it to be true. For if made in good faith and upon suspicion reasonably aroused, it is not an indignity', justifying a decree in divorce.

Freedman on Divorce, §315": *Thornton v. Thornton,* 168 Pa. Superior Ct. 391, 77 A. 2d 691. So also if plaintiff's seemingly improper intimacies with Mattioli caused defendant to abuse her physically, such conduct, since it was not excessive as we have found, is not ground for divorce on a charge of indignities. *Monaco v. Monaco,* supra; *Meligakes v. Meligakes,* 151 Pa. Superior Ct. 1, 28 A. 2d 815.

It is evident to us from a review of the entire record that plaintiff's testimony stands impeached not only by her relationship with Mattioli but by her failure to call available witnesses, undoubtedly for the reason that their testimony, if called, would have been unfavorable to her. Accordingly, she has not met the burden of proving her case by a preponderance of "clear and satisfactory evidence" (*Dash v. Dash,* 357 Pa. 125, 53 A. 2d 89) and has failed to establish "compelling, imperious reasons" for the severance of a marriage relationship of 21 years. *Gerster v. Gerster,* 166 Pa. Superior Ct. 105, 70 A. 2d 429. On the contrary plaintiff's course of conduct with Mattioli clearly indicates that she is not an injured and innocent spouse as contemplated by our divorce laws. *Wilson v. Wilson,* 163 Pa. Superior Ct. 546, 63 A. 2d 104.

Decree in appeal No. 30 reversed and complaint dismissed.

The record in this case comprises well over 1,000 pages. The case might have been adequately, and certainly more effectively, tried within the limits of a fraction of the volume of the present testimony. Both counsel as well as the Master are chargeable with needlessly extending this record. The defendant could have ruled the plaintiff for the trial of the issues by a jury (Act of May 2, 1929, P. L. 1237, §35, 23 PS §35) which if allowed by the court would have relieved him from the payment of a Master's fee. This was not done. Ac-

cordingly the lower court had the power in its discretion to order the defendant to pay an additional Master's fee but only in an amount reasonably compensating him for necessary services performed. And this is so regardless of the fact that the evidence is insufficient to support the decree of divorce entered by the lower court. Cf. *York v. York,* 107 Pa. Superior Ct. 522, 164 A. 87. The plaintiff had paid $125 to apply on costs including the Master's fee, and in our view the allowance of $500 additional Master's fee is grossly excessive under the circumstances. We have repeatedly held that the financial circumstances of the parties is to be taken into consideration in allowances for a wife's counsel fees in a divorce action. *Meinel v. Meinel,* 117 Pa. Superior Ct. 263, 178 A. 174. The rule is applicable also to an additional Master's fee for which a defendant-husband may be made liable by order of court. Cf. *Lynn v. Lynn (No. 2),* 76 Pa. Superior Ct. 440. Respondent is a carpenter. His highest weekly wages ever earned, according to the testimony, was $55. All of the real estate has been in the names of both parties by entireties and the net income from it which defendant received, after taxes and mortgage payments, was but $45 per month. The Master was in position to restrict the record to proper proportions by controlling the scope of the examination of the witnesses and by prompt rulings on the admission of evidence. In the light of defendant's financial resources, there is a plain abuse of discretion in this instance, (Cf. *Brong v. Brong,* 129 Pa. Superior Ct. 224, 195 A. 439) which makes it necessary for us to reduce the allowance of an additional Master's fee to a reasonable amount.

The order in appeal No. 19 is modified by reducing the allowance of additional Master's fees to $200.