## Cowher v. Cowher, Appellant.

Submitted April 14, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*August L. Sismondo,* for appellant.

No appearance was made nor brief submitted for appellee.

OPINION BY ARNOLD, J., October 1, 1952:

The defendant-wife appeals from a decree of divorce granted on the grounds of desertion. The case was heard before a master who recommended a decree, and over the exceptions of the defendant the common pleas sustained the master. It is well settled that it is our duty to make an independent examination of the testimony. In doing so we, of course, keep in mind that the master who heard and saw the witnesses had an advantage that we do not possess. After a very careful examination of the record we arrive at the conclusion that the decree must be reversed.

The defendant admits that she left the common home but (as will be hereinafter discussed) seeks to justify that act. Neither the master nor the court below makes any specific finding as to the lack of credi-

bility of the defendant, except insofar as findings of fact are against her.

The parties were married in 1936, and there were several separations before the date of the final separation on March 30, 1946. When the parties were married the wife was a cripple requiring the use of two crutches. On one of the earlier separations she obtained an order of support against him, and while this is not conclusive, it is entitled to weight. At his request she then returned home on his written promise that he would be truthful; would help her around the house and make her happy and not cause her any more worry; and that he would not argue with her over financial matters. He also orally promised that he would not drink so much. As soon as he got her back he resorted to the same treatment of her as had existed before the separation. He began chiding her for having had him arrested, and he refused to permit her relatives to visit the house. He would get drunk and vomit all over the living room; on at least one occasion he urinated in the living room; and in short his treatment of her was beyond excuse. It is claimed that the conduct merely shows incompatibility. In our opinion it is much more than that, to wit, it is a course of conduct over the years that clearly discloses both indignities and a husband without love for his wife.

She had been hospitalized from March 13 to March 27, 1946, having undergone an operation. Upon her return to the home he again started to drink heavily, and on the 30th of March he was intoxicated, charged that she was not fair about money, threatened to twist her neck, and made an assault; whereupon she threw a cup of coffee at him. He thereupon grabbed her by the hair and ordered her "to get the hell out of here," and slapped her and knocked her to the floor. She then left the house. This brief recitation is from the

defendant's testimony, but in a large measure she was corroborated and we see no reason to disbelieve her. In addition, her testimony is consistent throughout.

The court below found that the plaintiff did indulge to excess in intoxicating liquors, but merely stated that intemperance is not a ground for divorce. This last statement is quite correct, but it must also be recognized that intoxication does not excuse improper conduct, nor is it a defense to indignities. In regard to his frequent intoxications the plaintiff merely claimed that he was never so drunk that he did not know what he was doing. But his employer's testimony showed that he was frequently absent from work due to the excessive use of intoxicating liquors. Not only do we think that the plaintiff failed to prove a desertion, but we also are of the opinion that his testimony is not entitled to credit.

Believing the defendant, as we do, as to the acts taking place on March 30, 1946, it follows that either the plaintiff consented to the separation, or he ordered her out of the house. In neither event could he charge her with desertion. See *Klaus v. Klaus,* 147 Pa. Superior Ct. 189, 24 A. 2d 33. This is further borne out by the fact that he claims to have gone to her on two different occasions and requested her return. If the desertion was against his will he did not have to seek a reconciliation. In our opinion, his attempts to get her to come home merely create a situation such as frequently occurs, where a husband makes a cold and formal offer solely to help him thereafter to secure a divorce. It was therefore his duty to take some unequivocal step in good faith to resume their marital relations. His attempted reconciliation consisted only of a request to come home. No word of affection was expressed, no spirit of contriteness was shown, and in short it boiled down to a simple statement: "come back

and live with me." He did not meet the burden of establishing good faith. The testimony shows that for years she had suffered from his indignities. Obviously the wife was not bound to return under these circumstances.

His own testimony makes it very clear that the offers of reconciliation were not made in good faith. He states on the stand that he loves her and will love her until he dies. Yet in spite of this alleged love he insists upon obtaining a divorce (Cf. *Fogel v. Fogel,* 161 Pa. Superior Ct. 361, 365, 54 A. 2d 844), and the reason for it seems perfectly clear, to wit, so that he can get rid of a second support order which was granted subsequent to the separation. The wife testifies that upon these offers of reconciliation she stated she would return "any time you can show me you would be a good husband and make me a real home." While the master and the court below say that he could not show her he would be a good husband unless she returned, yet the testimony does not establish that he would treat her right if she would come back.

Decree reversed.