## Vergoni, Appellant, *v.* Vergoni.

Argued March 1, 1954. Before RHODES, P. J., ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ.

*Gerald G. Dolphin,* with him *Guy A. Solfanelli,* for appellant.

*Carlon M. O'Malley,* for appellee.

OPINION BY RHODES, P. J., July 13, 1954:

The grounds for divorce alleged in plaintiff-husband's complaint, filed in the Court of Common Pleas of Lackawanna County, were indignities to the person and desertion. The divorce action was heard by Judge ROBINSON who refused a decree and dismissed the complaint.

The parties were married in 1924 and have three children. After their marriage they lived at various places in the City of Scranton until 1939. In 1939 the parties moved to Old Forge, Pennsylvania, where plaintiff operated a tavern. Their living quarters were on

the second floor of the place of business. About a year later defendant, with her children, left the home in Old Forge and went to live with her parents in Scranton. The parties have not resided together since that time. Plaintiff retained his residence and business establishment in Old Forge until 1946, when he purchased a hotel in Susquehanna, Pennsylvania, which he now operates and where he presently resides.

As usual in cases of this type, the testimony of the parties is most contradictory. Plaintiff attributes much of the marital differences to defendant's insistence that they reside in the immediate neighborhood of the residence of her parents.

In addition plaintiff offers by way of indignities his testimony that defendant neglected her household duties by reason of continually visiting her parents so that he had to get his own meals and wash his own clothes, that she constantly called him names, and that on one occasion she threw a plate at him.

As to the alleged desertion, plaintiff presents a picture of discontentment on the part of his wife with living in Old Forge. On July 4, 1940, according to plaintiff, defendant took the children to her parents' home and lived there until the following Labor Day. On the latter day, she returned with the children to the residence in Old Forge. Upon her arrival she found a woman named Nancy Metro working at plaintiff's bar. Plaintiff also testified that defendant insisted Nancy Metro be discharged. According to the plaintiff, he, in defendant's presence, advised Nancy Metro that her employment would cease on the following Saturday. On such Saturday, however, plaintiff testified, defendant took her clothes and children and went back to her parents' home in Scranton, where she has since resided. He further testified that in 1942 he sought a reconciliation, but it was refused by defendant.

A few days after her departure on September 14, 1940, defendant caused plaintiff to be arrested for desertion and nonsupport. An agreement was subsequently entered into under which plaintiff agreed to pay the sum of $75 per month for the support of defendant and the children.

Defendant's version of her marital difficulties presents a very different picture. According to her, they were attributable chiefly to plaintiff's attachment to the other woman, Nancy Metro. She testified that this woman worked for her husband as a barmaid in a tavern on Chestnut Street in Scranton from 1930 to 1933, and that in the summer of 1930 she found them in a compromising position in a room in the tavern. Although defendant ordered the woman to leave the premises, the only tangible response she received from her husband was that he inflicted a beating upon her at home that night. From 1930 until their separation in 1940 such abusive treatment by plaintiff occurred once or twice a week except during a period when she was working for the W.P.A. as a sewing instructress. When plaintiff went into business in Old Forge, Nancy Metro again appeared on the scene, and from 1939 to Labor Day, 1940, on many occasions defendant observed their amorous conduct. Any criticism of her husband's conduct was forcefully resented by him.

Defendant admits that she requested plaintiff to move away from Old Forge. She likewise admits having voiced resentment and objection to the presence of Nancy Metro. She testified that, upon her declaring to plaintiff that he would have to choose between her and Nancy Metro, the plaintiff replied, "You get out, she stay. She is my bread and butter, she stay."

Defendant testified that on two occasions after she left the plaintiff—one about a month after the separation and the other about two weeks later—she saw

plaintiff and told him that if he would get rid of the Metro woman they could live together again. She stated that he refused to do so.

Two of the daughters of the parties corroborated defendant relative to plaintiff's course of conduct toward her including physical abuse. Other witnesses testified as to the condition of defendant after receiving beatings in 1940, which plaintiff later admitted.

It appears that in 1941 plaintiff took Nancy Metro into his business, in Old Forge, as a partner. Upon purchasing the hotel in Susquehanna, the liquor license was transferred to plaintiff and Nancy Metro. Plaintiff testified that he had given her a one-quarter interest in the business because it was necessary to have some honest person watch the business for him. But he also testified that she was only on the premises once or twice a month. The testimony clearly establishes that at this hotel plaintiff and Nancy Metro occupied the same bedroom.

Plaintiff made two trips to Italy, one in 1949 and the other in 1951. He denied that Nancy Metro accompanied him on either trip, although the credible testimony is that she did. He admitted, however, that he purchased two tickets for the voyage in 1951 under the names of Mr. and Mrs. Vergoni, and that a woman accompanied him on this trip. He identified this woman as "Mary Serafini."

We have frequently stated that, where a divorce case is heard by a judge, without a jury, his judgment upon the credibility of the witnesses is entitled to the highest consideration in an appellate court, and his conclusion will not be lightly disturbed. *Horton v. Horton,* 170 Pa. Superior Ct. 209, 85 A. 2d 602; *Phipps v. Phipps,* 368 Pa. 291, 81 A. 2d 523.

In the present case, Judge ROBINSON specifically states in his opinion that he rejected plaintiff's version

and accepted that of defendant as truthful. In referring to plaintiff's explanation as to why he took Nancy Metro into his business as a partner, the judge said: "The submission to the court of the issue of credibility involved in this point is itself effronterous." And with respect to plaintiff's version of the circumstances surrounding the European trip with "Mary Serafini" the judge observed that such explanation would "tax the credulity of even a ten year old."

Upon our independent review of the record (*Cutter v. Cutter,* 165 Pa. Superior Ct. 103, 104, 68 A. 2d 192), we have come to the same conclusion as to the credibility of the parties as did the trial judge who heard the testimony and saw the witnesses. This question being resolved the determination of the issue is relatively simple.

In an action for divorce on the ground of indignities, the burden is on the plaintiff to prove that the defendant by a course of conduct rendered the plaintiff's condition intolerable and life burdensome, and that plaintiff was the innocent and injured spouse. Act of May 2, 1929, P. L. 1237, §10, as amended by the Act of March 19, 1943, P. L. 21, §1, 23 PS §10; *Politylo v. Politylo,* 173 Pa. Superior Ct. 223, 228, 95 A. 2d 241; *Matovcik v. Matovcik,* 173 Pa. Superior Ct. 267, 270, 98 A. 2d 238.

The testimony of defendant and her witnesses convincingly establishes that plaintiff is not an injured and innocent spouse. On the contrary, it is clear that for many years plaintiff has been engaged in a meretricious relationship with Nancy Metro in flagrant violation of his marriage vows and with complete disregard for the feelings of his wife. Such a course of conduct, together with the physical abuse to which he subjected defendant, not only removed him from the category of an innocent spouse, but also afforded de-

fendant with more than adequate reasons for leaving the matrimonial domicile. See *Copeland v. Copeland,* 155 Pa. Superior Ct. 102, 38 A. 2d 364. Plaintiff's conduct constituted personal indignities to his wife. *Macormac v. Macormac,* 159 Pa. Superior Ct. 378, 380, 48 A. 2d 136. But it is not necessary for us to decide whether such conduct would entitle defendant to a divorce, as plaintiff was not an injured and innocent spouse. *Priest v. Priest,* 162 Pa. Superior Ct. 232, 237, 57 A. 2d 437. Besides, under defendant's version of the facts surrounding the separation, it would appear that plaintiff invited it or acquiesced therein. *Com. ex rel. Cartmell v. Cartmell,* 164 Pa. Superior Ct. 108, 110, 63 A. 2d 691; *Cowher v. Cowher,* 172 Pa. Superior Ct. 98, 91 A. 2d 304.

Plaintiff contends that incidents occurring after 1942 had no bearing on the question of his right to a divorce because his right to a divorce on the ground of desertion had accrued. The answer is that he never did acquire a right to a divorce because of desertion. And it is well established that in a proceeding for a divorce on the ground of indignities to the person evidence of what occurred after the separation is relevant for the purpose of shedding light upon the nature of the atmosphere existing while the parties lived together. *Glick v. Glick,* 170 Pa. Superior Ct. 142, 144, 84 A. 2d 248. We think this is particularly true when the subsequent acts have to do with plaintiff's relationship with the same woman with whom his prior conduct and attachment are offered by defendant as one justification of her separation from him. *Orsuto v. Orsuto,* 171 Pa. Superior Ct. 532, 538, 91 A. 2d 284.

Decree dismissing complaint is affirmed.