Cox, Appellant, *v.* Cox.

Argued December 28, 1956. Before HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (RHODES, P. J., absent).

Before WEISS, J.

*James Lenahan Brown,* with him *Lee Paul Heid,* for appellant.

*Irving I. Erdheim, Ralph S. Sapp, James E. Mc-Laughlin,* and *James P. McArdle,* for appellee.

OPINION BY HIRT, J., September 11, 1958:

This is an appeal from the order of the lower court entered on June 13, 1956 awarding $110,600 to the defendant for counsel fees in this divorce case, "said award [in the language of the order] being based upon the following determination as to reasonable compensation due to each of defendant's counsel: Irving I. Erdheim, $55,600; Ralph S. Sapp, $35,000; and James P. McArdle, $20,000." In the order the master was also awarded a fee of $3,500. The master had previously received allowances of $500 and $1,000 which by stipulation of record were to apply to his final fee, in addition to the nominal amount deposited with the prothonotary by plaintiff on filing his complaint. When the above order was made the divorce case was still pending and undisposed of in the lower court. At the time of argument before us on December 28, 1956, we indicated that we would not dispose of this appeal until after final order in the divorce case. And from the bench we gave notice of our intention to consolidate for argument the present appeal with appeals from further orders for fees and expenses,

if any, and to continue the argument until after final disposition of the divorce case. The master filed his report on February 18, 1957; in it he recommended the dismissal of plaintiff's complaint. A decree of divorce was denied by the court, but not until 11 months later, on January 28, 1958. The lower court, after final order in the case, directed plaintiff to pay an additional fee of $15,000 to the master; the master had asked for $35,000. Plaintiff's appeal from that order has been consolidated, by agreement, for disposition with the present appeal.

Plaintiff had been a practicing dentist in Pittsburgh prior to his association with United States Overseas Airlines, Inc. At the time of his marriage with the defendant on May 16, 1951, he was president and majority stockholder of the corporation. Following the marriage (a second venture for the defendant) the parties maintained an apartment in the City of New York for something less than 15 months. Defendant said that Dr. Cox then deserted her and their seven-months-old daughter. Plaintiff's testimony is that she excluded him from the apartment by locking him out. A series of actions in various courts began on August 7, 1952 (one year and three months after the marriage) when the defendant brought a suit in the City of New York for a legal separation from her husband (essentially the equivalent of our divorce a mensa et thoro) alleging abandonment and nonsupport. On October 20, 1952 a judge of the New York Supreme Court in the proceeding directed Dr. Cox to pay his wife $150 per week, temporary alimony, and in the proceeding, granted her the custody of their infant child; in addition that court directed him to pay her $1,500 as fees for her counsel, Irving I. Erdheim of the bar of the City of New York (in reality an appellee here). Further additional counsel fees were awarded after trial

of that proceeding and the alimony was increased in amount to $200 per week.

The question of the custody of Maureen, the child of the parties, was a continuing source of conflict. On August 27, 1952, while the separation proceeding was pending in New York, Dr. Cox took the child from his wife's apartment to the home of his parents in Pittsburgh. And when he refused to return the child the New York Court adjudged him guilty of contempt. The defendant, Mrs. Cox, then brought habeas corpus in the Allegheny County Courts. On June 4, 1953, Judge WEISS, in that proceeding, without taking testimony, awarded custody of Maureen to Mrs. Cox on the basis of the New York Court order. Subsequently a petition was filed by Dr. Cox's parents seeking vacation of the order. The defendant as relatrix in the proceeding did not appear at the hearing on the application held on June 26, 1953. In the opinion filed by Judge WEISS, in disposing of the petition, it is said: "Very damaging testimony was presented against Mrs. Cox, relatrix, regarding *her fitness* to care for said child. Among the witnesses was Doctor Harold W. Lovell, an outstanding neuro-psychiatrist of the State of New York, who testified in substance: That Mrs. Lorraine Cox was a 'psychopathic personality' with paranoid trends and a 'confirmed alcoholic' and was a dangerous person and might do personal harm to her child to spite her husband's wishes." In reliance on this testimony the court on July 1, 1953 vacated the order of June 4, 1953. And by an order on August 3, 1953 the Pennsylvania court, by Judge WEISS, awarded "permanent custody of said minor, Maureen Cox" to her father, Ralph Cox, Jr.

On February 6, 1953 Mrs. Cox had brought a second proceeding in New York State in which she, alleging that Dr. Cox was a resident of Pittsburgh, se-

cured, ex parte, an order of Sequestration, from the New York Courts. The purpose of the proceeding, brought solely on the advice of her counsel Irving I. Erdheim, was to secure control of the corporation, United States Overseas Airlines, Inc., and of her husband's financial interest therein. Thus, early in the course of the marital conflict, New York counsel disclosed not only a studied plan of harassment of the plaintiff, but also an eye to the main chance of obtaining fees in exorbitant amounts out of the property of the plaintiff. On February 10, 1953, in the office of her counsel, Erdheim, in New York, Mrs. Cox held a purported meeting of the corporation in the Sequestration proceeding. She had given no notice of the meeting to anyone and she alone was present. At this so-called stockholder's meeting she took action discharging all of the directors and officers of United States Overseas Airlines, Inc. and (albeit illegally) she installed herself as sole director, president, secretary and treasurer of the corporation.

Against this background, and undoubtedly accelerated by it, the plaintiff filed his complaint in divorce on November 4, 1953, charging indignities and cruel and barbarous treatment. Defendant answered the complaint, and in response to her rule, the plaintiff filed a bill of particulars. A master, Lewis J. Nescott, Esq., of the Allegheny County Bar was appointed on August 9, 1954. After four continuances, at least two of which were over the strenuous objections of the plaintiff, the case was finally set down for trial on January 10, 1955, almost a year and one-half after the appointment of the master. In the notice to counsel of the date fixed for the hearing the master (perhaps to mollify the plaintiff because of the continuances) stated: "No further continuances will be granted except by order of court or agreement in writing of counsel."

In the meantime on October 29, 1954 a stipulation had been entered into by the parties which disposed of at least some of the collateral controversies. In the stipulation plaintiff agreed (1) to pay his wife $500 per month as alimony pendente lite in the divorce action; (2) he agreed to pay her $8,000 in satisfaction of all arrearages on orders of the New York State Court; (3) he agreed to pay defendant's counsel of record, Irving I. Erdheim, $4,000[1] *in satisfaction of all counsel fees to date for all services to Mrs. Cox in New York, and in Pennsylvania in the County of Allegheny;* (4) a money judgment of record in the State of New York against the plaintiff which had been entered as a result of accrued alimony under the order of the New York Court was to be satisfied. By the 10th provision of the stipulation it was agreed with the approval of the Allegheny County Court, that "Lorraine Cox shall have the temporary custody of the said child [Maureen] during the pendency of these proceedings"; except that Dr. Cox or his parents shall have temporary custody of the child for one month ending December 6, 1954, and for shorter subsequent periods thereafter, specifically set forth in the stipulation.[2]

---

[1] This payment was in addition to the fees awarded on Erdheim's petition in the New York proceedings. In the application there he had asked for $8,500 in addition to $1,850 in fees previously received. In support of the petition he argued that a fee in that amount "was not unusual for his office in this type of case." The court was not unduly impressed; $500 was awarded and that amount was promptly paid by plaintiff. The $4,000 which was paid on October 29, 1955 was distributed thus: $3,250 to Irving I. Erdheim and $750 to Ralph S. Sapp.

[2] Subsequently the Allegheny County Court adjudged plaintiff and his parents guilty of contempt for failure to comply with the terms of its order and the court fined each of them $1,000. A 90-day jail sentence was also imposed on Dr. Cox. On appeal to our Supreme Court however the orders were reversed on January 16, 1958 in *Cox v. Cox,* 391 Pa. 572, 137 A. 2d 779.

When the divorce case finally came on for trial on January 10, 1955, plaintiff was represented by New York counsel who (relying on the statement in the master's notice that no further continuance would be granted by him) came to Pittsburgh with his witnesses prepared to prosecute the case to its conclusion, in continuous hearings before the master. The trial of the case nevertheless was interrupted before noon of the second day when Mr. Erdheim gave notice of an intended application for additional counsel fees. The petition was presented to Judge NIXON and the whole of the afternoon of January 11, 1955 was consumed (21a-71a) in disposing of it. The application was for $5,000 in fees. Judge NIXON refused additional fees but ordered plaintiff to pay the defendant $2,-500 as expense money. This amount was promptly paid by the plaintiff. During that proceeding, again over the plaintiff's strenuous objection Judge NIXON ordered what was the fifth continuance of the divorce case. The continuance was granted (on ground which we cannot recognize as valid under the circumstances), because of "professional commitments" of Mr. Erdheim in New York. Referring to February 14, 1955, the date which was set by Judge NIXON for the adjourned hearing, Mr. McArdle of defendant's counsel, said: "Then it is desirous by counsel on both sides that when the case is reconvened, even if it requires night sessions it will proceed right on through until the testimony has been taken before the Master." This declaration of intention (in substance repeated a number of times throughout the proceeding by counsel representing defendant) proved to be as illusive as *ignis fatuus*. On February 14, 1955 the time appointed for the adjourned hearing, the master was ill and the case was continued to April 25 and again to May 3. A further continuance was then had, in this instance, how-

ever, by agreement, to June 20, 1955 when the trial was resumed for the first time since January 11, 1955. Testimony was then taken at hearings before the master until June 30th when again with consent of counsel, the trial was adjourned to July 6, 1955. On July 7, defendant's counsel requested a continuance to August 1, 1955. A continuance to that date was ordered by Judge COLUMBUS over the objection of plaintiff's counsel. The hearings then were again continued until August 3. During the morning session on that date plaintiff's counsel was served with notice of another of defendant's petitions for counsel fees, returnable at 1:30 that day. The afternoon was consumed by argument before Judge NIXON on the application (79a-112a). Mr. McArdle asked the court "to set the figure at $200,000 for counsel fees" and he stated "we would like an Order of Court suspending the further taking of testimony in the divorce action until the testimony taken up to date has been transcribed and the balance on it paid by the Plaintiff, and then a hearing on an award so that Mr. Erdheim and other counsel can do some work that's more lucrative than this, at least immediately lucrative, so that their immediate needs can be decided." Plaintiff on his side of the case then was within one hour of resting. At this hearing Mr. Erdheim also stated: *"We are asking for a continuance at this time until the hearings with respect to counsel fees are concluded."* Judge NIXON adjourned the hearing for the day "to reconvene on August 4th, 1955." After plaintiff rested, the request of defendant's counsel was renewed before Judge NIXON on August 5, 1955, (125a-148a). Both the master and the court expressed the opinion that the trial could be completed within 15 days. Judge NIXON continued the trial to August 22, 1955. On August 22, 1955 still another application for fees was made before Judges

WEISS and NIXON. In disposing of the application the court directed plaintiff to pay $4,500 on account of defendant's counsel fees and in addition $500 to apply on the master's fee. To those awards the plaintiff excepted because no accounting had been made by the defendant of expense money theretofore paid by the plaintiff, as had been ordered by the court.

Trial before the master was resumed on August 22nd and after seven days of hearings a 13-day recess was declared until September 20, 1955 when plaintiff was served with notice that a hearing would be held on the application (filed on August 3, 1955) for additional counsel fees, on October 19, 1955. In fixing that date for hearing Judge WEISS stayed all proceedings meanwhile; and to this stay the plaintiff objected, contending that he was entitled to disposition of the divorce proceeding forthwith without further obstructive delays. (Up to the date of the present appeals no further testimony was taken in the divorce action). The hearing on the petition for fees nevertheless was further postponed to November 18, 1955. In the meantime plaintiff on November 9, 1955 petitioned the court for leave to discontinue the divorce action alleging that he had been prejudiced by "the delays and stays in the proceedings" and that the continuances, over his objection, had also materially increased his costs in the proceeding beyond reasonable amounts. In the petition he informed the court that he had removed from this State and was no longer domiciled here. No order was ever made on the petition for discontinuance of the divorce action. We are unable to agree with the lower court that plaintiff's petition to discontinue the divorce case was an admission by him that there was no merit in his complaint. The petition for discontinuance of the action well may have been prompted, as plaintiff contends, by his determination to put an end to the harassment to which he had been sub-

jected by obstructive continuances, and otherwise, by defendant's New York counsel. Judge NIXON during hearings on the phases of the controversy which came before him repeatedly stated in effect that this was an ordinary contested divorce action and nothing more. We are in complete agreement with that statement. No unusual legal questions were involved. The issues were all of fact and disposition of the case depended upon the master's estimate of credibility and weight of the evidence. We have not read all of the voluminous original record of the trial of the divorce case. But from what we have read plaintiff clearly was justified in bringing the action. We must assume however that the case was properly decided by the lower court in affirming the master's report in the absence of an appeal by plaintiff from the decree refusing a divorce. It is also clear however that the case could have been adequately tried in a fraction of the time actually consumed.

The application for counsel fees in the sum of $200,000 was finally heard by Judge Weiss on November 21, 1955, and on February 17, 1956 (with a direction to plaintiff to pay Irving I. Erdheim $100 expense money for attending the latter hearing. Compliance with this order brought the total paid by plaintiff on account of defendant's counsel fees and expenses to $11,100 exclusive of the $2,350 paid by plaintiff to defendant's counsel in the New York proceeding) and again on April 16, 1956. The proceedings appear in the record at 186a-249a. Judge Weiss made the order on June 13, 1956 on which the present appeal was taken. But it was not until January 28, 1958 that the lower court made a final order denying a decree of divorce.[3] Thus, after inordinate delays, more than

---

[3] Although plaintiff had promptly filed exceptions to the master's report—56 in number—the court in the opinion filed with the

four years elapsed after plaintiff's complaint was filed, before final disposition of the divorce case. Subsequently on March 1, 1958, the court awarded the master an additional fee of $15,000. Plaintiff's appeal from that order, is also before us by agreement at No. 221 April Term, 1958.

The opinion filed by the lower court in disposing of the application for counsel fees, in question, is not helpful. Admittedly it does not go to the record for facts. On the contrary a comparison of it with Mr. Erdheim's brief indicates that the purported findings in the opinion are largely rescripts of the averments (and for the most part *ipsissimis verbis*) of that brief. New York counsel is a self-styled specialist in divorce cases "for celebrities" and there is some evidence of his boast that he gets $1,000 to $5,000 for a single court appearance. However that may be, our appraisal of the money value of his services, in the present proceeding, do not agree with the price he has put upon them. Moreover he overlooks one salient fact: in Pennsylvania the practice of law, even in the field of divorce, is still a profession and not a business.

In passing, reference may be made to the conduct of defendant's counsel after plaintiff took the present appeal. Plaintiff had petitioned for supersedeas but when he did not immediately comply with the terms of our order (he averred that he was unable to secure a bond in the required amount) defendant's three attorneys on August 7, 1956 took an assignment from her of the amount awarded her and in their names brought suit against the plaintiff in New Jersey to collect the fees ordered by the lower court, in the total

---

order confirming the master's report and denying divorce stated: "There have been *no* exceptions filed to the Master's report by counsel for plaintiff." (Italics added).

sum of $110,600.[4] In addition they presented a petition requesting us to quash plaintiff's appeal, in which the master joined, on purely technical and inconsequential grounds, in no way going to the merits. To forestall the possibility that the questions before us in this appeal might be made moot by counsel's success in that action we reduced the amount of supersedeas bond to $20,000, which was promptly furnished by the plaintiff; and the New Jersey action, including we assume the attachment of a valuable airplane, was stayed.

Section 46 of the Act of May 2, 1929, as amended, 23 PS §46 provides that the court may upon petition in proper cases allow a wife reasonable alimony pendente lite and reasonable counsel fees and expenses. Cf. *Hanson v. Hanson,* 177 Pa. Superior Ct. 384, 110 A. 2d 750. The amount of such allowances is within the discretion of the court. Our review in this appeal is limited to an examination of the question of judicial discretion and the order may be reversed only for a "manifest abuse of that discretion." *Brady v. Brady,* 168 Pa. Superior Ct. 538, 79 A. 2d 803; *Morgan v. Morgan,* 182 Pa. Superior Ct. 182, 126 A. 2d 805. In *Albrecht v. Albrecht,* 175 Pa. Superior Ct. 650, 107 A. 2d 209 we summarized settled law thus: "In determining a wife's reasonable counsel fees, there are no fixed rules as to the amount which a husband should pay. 'How much shall be allowed . . . for counsel fees and expenses is a matter of judicial discretion and the validity of the order depends upon the proper exercise of that discretion.' . . . 'The statute contemplates . . . a *reasonable* counsel fee, limited by the necessities appearing from the evidence, such as will nearly as possible promote the administration of fair and impar-

---

[4] The master although a quasi judicial officer acting in place of the court (*Kolopen v. Kolopen,* 148 Pa. Superior Ct. 311, 25 A. 2d 569) joined as a plaintiff in the action to collect his award.

tial justice by placing the parties on a par in defending their rights.' In determining the fair and just amount of counsel fees, . . . the husband's ability to pay, the separate estate of the wife, the character, situation and surroundings of the parties are all to be considered." Cf. *Campana v. Campana,* 186 Pa. Superior Ct. 472, 142 A. 2d 169; *Rothman v. Rothman,* 180 Pa. Superior Ct. 421, 119 A. 2d 584. But the ability of the husband to pay is not the only element to be considered and *"the order ought never to be made for the purpose of transferring a part of the estate of the husband to the wife, [nor to her counsel] nor should it be made upon the theory that the wife is entitled, during the pendency of the proceeding, to the entire income [much less a subsantial part of the principal] of her dower interest in her husband's estate"*: *Koehler v. Koehler,* 73 Pa. Superior Ct. 41. (Italics added).

We may assume that the financial resources of the defendant are negligible, although there is no testimony on the subject. And we will accept the argument of appellee that plaintiff is a rich man although the evidence is inconclusive on the subject. His principal financial interest is in the United States Overseas Airlines, Inc. He was the holder of 800 of the 1200 authorized shares of stock in the corporation. The corporation had airplanes and other property of large value but its liabilities also were large. The airlines did not operate on schedules and the business of the corporation was not stable. A certified copy of a report of United States Overseas Airlines, Inc. to the Civil Aeronautics Board dated November 10, 1955 showed a net profit of $673,918 (less $250,000 set up as a reserve for taxes) for the period April 1, 1955 to June 30, 1955. But attached to plaintiff's petition to the court on July 19, 1956 for reconsideration of the terms of our original order as to the amount of bond

required for supersedeas a photostatic copy of a similar report of the corporation which had been filed with the Aeronautics Board showed an operating deficit of $305,240 for the quarter ended on March 31, 1956.

Even if we accept defendant's estimate of plaintiff's financial resources the awards in this divorce case for counsel fees are grossly excessive.

The order of the lower court is reversed and the awards are reduced to the following amounts, which the majority of us believe will adequately compensate counsel for services rendered in the light of defendant's needs, the plaintiff's ability to pay, and all other relevant considerations, to wit:

| | |
|---|---|
| Irving I. Erdheim | $8,500 |
| Ralph S. Sapp | 5,500 |
| James P. McArdle | 3,000 |

Cf. *Harrison v. Harrison*, 183 Pa. Superior Ct. 562, 133 A. 2d 870.

The master had received $1,500 to apply on his final fees and in our view is entitled to $2,500 additional.

Accordingly the order of June 13, 1956 is reversed, to the extent above indicated.

The order in No. 221 April Term, 1958 awarding the master $15,000 in additional fees is reversed.