Carle *v.* Carle, Appellant.

Argued March 24, 1960. Before RHODES, P. J., GUN-THER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONT-GOMERY, JJ.

*James Lenahan Brown,* with him *Robert J. Houri-gan,* and *Flood, Brown, Hourigan & Farrell,* for appellant.

*James P. Harris, Jr.,* for appellee.

OPINION BY WOODSIDE, J., June 15, 1960:

This appeal is from the order of the Court of Common Pleas of Luzerne County which granted a divorce a.v.m. to the plaintiff-husband, Nelson F. Carle, against the defendant-wife, Rita R. Carle, on the ground of indignities.

The wife-appellant raises eight questions. The second question relates to cruel and barbarous treatment. Since we are disposing of the case on the issue of indignities, as did the master and the court below, we shall confine our consideration to the remaining seven questions.

The defendant's initial contention is that the lower court erred in failing to sustain her preliminary ob-

jections to the bill of particulars. She contended that paragraphs 1, 2 and 10 of the bill of particulars contained multiple allegations of fact and that various paragraphs were vague, indefinite and speculative. No proof was produced of paragraph #1, and it was, therefore, not considered by the master or the court below. Regardless of this, a reading of all three paragraphs reveals no possible harm or prejudice to the defendant from these paragraphs. See *Lynch v. Wolfinger,* 163 Pa. Superior Ct. 405, 62 A. 2d 95 (1948).

The defendant's contentions in regard to the vagueness and indefiniteness of the bill of particulars pertain to the identity of parties before whom the alleged indignities took place, the time and place of their occurrence and the failure to particularize such terms as "vile and obscene names" and "scorn and contempt." It must be remembered that in cases of divorce on the grounds of indignities, the acts upon which an action is based usually occur over a long period of time—in this case, fifteen years. It would be virtually impossible to detail and date precisely each act of the defendant which would tend to show a settled hate and estrangement. We have reviewed the bill of particulars carefully. It contains approximate dates for most of the alleged incidents. A number of specific acts are set forth in detail with approximate dates and witnesses. The bill of particulars was sufficiently specific to inform the defendant of the nature of the cause of action against her and of the acts alleged to have been committed by her. We are convinced that she suffered no harm or prejudice from any technical defects therein.

The defendant's third through seventh questions pertain basically to whether the plaintiff has established legal grounds for divorce including his own status as an innocent and injured spouse.

494

The defendant contends that the plaintiff was not an innocent nor injured spouse because: (1) he "deserted the defendant" on October 6, 1956, and has persisted in the desertion since that time; (2) he neglected his wife by spending an excessive amount of his spare time at the grocery store of one Charles Gosart, a friend of the plaintiff; (3) he has "rebuffed every effort at reconciliation."

The first of these contentions begs the question. If the wife was guilty of a course of conduct amounting to indignities, plaintiff's departure from the common abode is not desertion. *Paterson v. Paterson*, 178 Pa. Superior Ct. 615, 115 A. 2d 919 (1955).

The issue of whether or not the defendant has given the plaintiff grounds for divorce on indignities is also determinative of the third contention. The plaintiff was under no obligation to return to a situation which made his condition intolerable and life burdensome.

The testimony does not indicate that the plaintiff neglected his wife by his visits to Gosart's store. He stated that his wife complained about his going there on "different occasions. *So I stayed away a while.*" (Emphasis supplied). There was evidence that the defendant at times encouraged the plaintiff to go to the store and on several occasions told Charles Gosart to "keep [plaintiff] busy, give him something to do, he drives me crazy around the house at night."

The defendant complains of many of the factual conclusions reached by the court below. It is, of course, our duty to make an independent investigation of the evidence in order to determine whether it does establish a legal cause for divorce. *Dash v. Dash*, 357 Pa. 125, 53 A. 2d 89 (1947); *McElroy v. McElroy*, 185 Pa. Superior Ct. 78, 138 A. 2d 299 (1958). This we have done. Even ignoring the evidence to which the defendant objects in her brief, we are led to the same conclu-

sions expressed by the court below as follows: "... arguments arose between the parties and after one such argument defendant assaulted plaintiff with a deer rifle, hitting him across the face and cutting and scarring his lip. This altercation was followed by a long series of arguments ... Thereafter, ... defendant suggested that they move and as a result plaintiff purchased a lot in Idetown and erected a home there doing most of the work himself ... She also complained about the village of Idetown stating that she was dissatisfied and wanted no part of it ... Finally, after one ... argument, while plaintiff was taking a bath, defendant went into the bathroom and hammered him over the head with a shoe. Plaintiff was stunned and when he regained his full consciousness defendant was splashing water on his face and removing the water from the tub. Later that night, the defendant left home and did not return until the following night ...

"Shortly thereafter defendant suggested that they move from Idetown and as a result plaintiff sold this house and lot and purchased a lot in Dallas on which he erected another home ...

"On several occasions during [their residence in Dallas] defendant requested that plaintiff 'get the hell out of the house' stating that she was still young and wanted to play the field. On other occasions defendant would herself leave home for varying periods of time without telling plaintiff where she was going or where she had been. Defendant on one occasion took from plaintiff's wallet money which belonged to his employer, and when he took it from her, she struck him with a wrought iron table, scratched him violently and told him, among other things, that she hoped he would die of cancer of the throat. The evening of the last mentioned incident defendant left home and was gone for three days.

"On October 6, 1956 at about 10:00 p.m. plaintiff had gone to his friend's store where he was helping to unload a late delivery of merchandise. While there defendant drove into the driveway, got out of the car in her negligee and in the presence of others threw a bundle of clothes toward plaintiff and cursed at him telling him 'You son of a bitch, here's your clothes and don't ever come near me again' . . .

". . . defendant continuously degraded and belittled plaintiff in front of others . . . she called him a 'whoremaster', referred to his car as a 'whorehouse on wheels' and referred to his first wife as a 'God damned whore'.

"After the separation and on occasions when plaintiff was visiting his son, Charles, defendant repeatedly started arguments with plaintiff and used obscene language toward him in the presence of their son and others. On one occasion defendant even attacked plaintiff with a blunt instrument apparently because plaintiff did not want to discuss their marital differences at that particular time."

The record in this case is replete with many acts of the defendant in addition to those quoted above which indicate a settled hate and estrangement on her part and which constitute indignities to the person of sufficient weight to sustain a decree of divorce.

The testimony of Nelson F. Carle, supported by the testimony of disinterested corroborating witnesses, clearly establishes that the defendant's conduct has been such as entitles the plaintiff to a divorce on the ground of indignities. Although the defendant and the parties' eleven year old son, Charles, offered testimony contradictory to that of the plaintiff and his witnesses, we find, as did the master and the court below, that the plaintiff's testimony, corroborated by witnesses who had no stake in the outcome of this case, is more worthy

of belief. Charles Carle, the parties' invalid son, has been in the exclusive custody of the defendant since June of 1957, and because of his disability, is particularly dependent upon her.

Where, as in this case, the credibility of the witnesses is an important, if not determinative issue, the demeanor of witnesses may well be the deciding factor in appraising trustworthiness. *Robinson v. Robinson,* 183 Pa. Superior Ct. 574, 133 A. 2d 259 (1957). The master's report, although advisory only, is to be given the fullest consideration as regards the credibility of witnesses, and where his findings as to credibility are not at variance with the record, they should not be lightly disregarded. *D'Alessandro v. D'Alessandro,* 187 Pa. Superior Ct. 194, 144 A. 2d 445 (1958); *Leslie v. Leslie,* 184 Pa. Superior Ct. 18, 132 A. 2d 379 (1957). In the present case, the master presented a thorough analysis of the testimony and discussed fully the question of credibility. The record reveals no reason to reject, and every reason to accept, his appraisal of the credibility of the witnesses.

The defendant attempts to bring this case within the doctrine of *Moyer v. Moyer,* 181 Pa. Superior Ct. 400, 124 A. 2d 632 (1956), which holds that acts of a spouse resulting from ill health do not furnish a ground for divorce. The record in this case does not warrant an inference that defendant's course of conduct over a period of fifteen years resulted from any physical or mental ailment. There is no evidence of any illness of the defendant during much of the time when the indignities occurred. Nor did this court mean to imply by its decision in the *Moyer* case that a wife was free to assault, with rifle, shoe, or wrought iron table, her spouse and thereafter excuse her conduct on the basis that she was suffering from an "emotional upset." To be a defense to an action for divorce, physi-

498

cal or mental illness must be the *cause* of defendant's conduct. The ailment must have produced the acts complained of and have prevented the defendant from conducting herself in a normal and proper relationship toward her spouse. Such was not the case here.

The defendant also appeals from the order of the lower court of November 3, 1959, providing for additional counsel fees for the defendant's counsel in the amount of $375. Under this order and a prior order the plaintiff has been ordered to pay his wife's counsel fees in the amount of $725 in addition to considerable costs of the proceedings. Unlike our review of the divorce decree, our review of this order is limited, and we can reverse it only for a manifest abuse of discretion by the court below. *Cox v. Cox*, 187 Pa. Superior Ct. 177, 188, 144 A. 2d 458 (1958). A review of the record including the depositions taken on this question does not reveal any such abuse of discretion. The lower court need not require the husband to pay the full amount which the wife's counsel may reasonably demand of her or which she has actually paid. *Cox v. Cox*, supra. The order of the court below directed the plaintiff to assume the cost of "mimeographing briefs and extracts of testimony, in connection with [this] appeal . . ." The briefs were ordered printed by this Court, and the plaintiff should, therefore, pay the cost of printing the briefs.

The decree and order are affirmed.