Shuman, Appellant, *v.* Shuman.

Argued March 24, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Ralph B. Umsted*, for appellant.

*James McGirr Kelly*, for appellee.

Opinion by WRIGHT, J., May 10, 1961:

In this divorce proceeding the lower court ordered the plaintiff-husband to pay a Master's fee in total amount of $10,000.00. The plaintiff was credited with

the sum of $1,900.00; representing allowances to the Master which had already been paid, and judgment was entered in favor of the Master and against the plaintiff in the sum of $8,100.00. The plaintiff has appealed.

The complaint in divorce a.v.m. on the ground of indignities to the person was filed on April 18, 1958. There were twenty-one hearings before the Master, fifteen full-day and six part-day. The notes of testimony covered 2,011 pages. The Master testified that he had spent 405 hours on the case. His report, recommending that a decree in divorce be granted, covered 198 typewritten pages. On June 20, 1960, the court below dismissed the wife's exceptions and approved the Master's report. However, the entry of a final decree awaits the disposition of this appeal, as well as a companion appeal relating to counsel fee for the wife's attorney.

The Master's fee is concededly an essential item in the conduct of an ordinary divorce proceeding, whether or not it be considered a part of the expenses. See *York v. York,* 107 Pa. Superior Ct. 522, 164 A. 87. The Divorce Law[1] does not prescribe the compensation of Masters. Section 66 of the statute (23 P.S. 66) provides that the "several courts of common pleas are hereby authorized . . . to regulate proceedings before masters, and to fix their fees". It is well settled by our cases that the amount of an allowance for the Master is largely within the discretion of the court below. However, the exercise of such discretion is not absolute and the court's action is subject to review on appeal: *Cox v. Cox,* 187 Pa. Superior Ct. 177, 144 A. 2d 458. Contrary to the statement of the Master in his brief before the lower court that "ability to pay is not a factor in this case", our decisions have firmly established the principle that the financial position of the parties

---

[1] Act of May 2, 1929, P. L. 1237, 23 P.S. 1 et seq.

is a fundamental consideration in the determination of the amount of the award: *Orsuto v. Orsuto,* 171 Pa. Superior Ct. 532, 91 A. 2d 284.

Appellant is an osteopathic physician, 51 years of age. He maintains an office at 1728 Pine Street, in the City of Philadelphia. Appellant and his wife have four children, David, aged 20, Frederick, aged 18, Stephen, aged 17, and Carla, aged 16. David and Stephen presently live with appellant in a third floor walk-up apartment consisting of two rooms, kitchen and bath, for which appellant pays $65.00 per month rent. Frederick and Carla live with their mother in a residence owned by the entireties at 34 East Washington Lane. By an order of the Municipal Court, appellant was required to pay $85.00 per week for the support of his wife and the two children living with her. This order was subsequently reduced to $70.00 per week. Appellant and his wife also own, as tenants by the entireties, a bungalow in the Poconos. Appellant's only additional assets, other than a small checking account, are an investment in the Juniata Park Medical Center in amount of $2,000.00, and an automobile for which he paid $1,650.00. He has borrowed to the full extent on his life insurance, the face value of which is $10,000.00. His savings have been exhausted and he must depend almost entirely on current earnings. His total gross income for the four years prior to the hearing, as shown by his federal income tax returns, was as follows: 1956—$9,205.00, 1957—$12,470.00, 1958—$11,775.00, and 1959—$15,143.00. His net income for those years was as follows: 1956—$5,599.00, 1957—$7,755.00, 1958—$6,445.00, and 1959—$9,647.00. The internal revenue service made an audit which failed to disclose any discrepancies. See *Commonwealth ex rel. Baylinson v. Baylinson,* 191 Pa. Superior Ct. 51, 155 A. 2d 203.

An examination of the opinion of the hearing judge discloses that it is principally concerned with the ex-

tent of the Master's services, the time he spent on the case, his reputation and standing as a member of the bar, the payments made to the court stenographer who transcribed the testimony,[2] and the minimum fee schedule of the local bar association. The important issue of appellant's ability to pay is given little if any consideration. Ascribing bad faith to appellant, the hearing judge states: "If plaintiff were unable to finance a divorce action he should not have started one". However, it was certainly not intended that our courts should be closed to worthy litigants simply because they may not be able to pay unreasonable fees.

Appellant and appellee have each cited cases in support of their respective contentions. No useful purpose would be served by reviewing these cases seriatim. Every decision of this nature must rest on its own factual situation. We agree that the Master is an able and experienced member of the bar, and that he must maintain an office and support his family. We have no reason to doubt his testimony as to the amount of time spent in hearings and in the determination of the issues. However, we are unanimously of the opinion that the Master's fee, as fixed by the court below, is excessive and must be substantially reduced. It is the view of a majority of us that the total amount should be $3,000.00, of which, as hereinbefore noted, the sum of $1,900.00 has already been paid.

Judgment reversed, and the record is remanded to the court below for the entry of an order in the amount of $1,100.00.

---

Concurring Opinion by Woodside, J.:

I concur with the majority that the sum awarded the master in this divorce case was excessive for the

---

[2] Appellant paid $2622.80 to the court stenographer. The hearing judge calculated that an additional $666.00 should be considered as a proportionate allocation of the court stenographer's salary.

reasons set forth in the majority opinion, but I am also moved to reduce the fee for an additional reason.

In my opinion the master, and to a lesser extent the attorneys for the parties, must bear the responsibility for an inordinately and unnecessarily long record. None of them, least of all the master, should profit by his failure to keep the case within reasonable judicial bounds. (The court stenographer, referred to in the dissent, bears no responsibility for the length of the record.)

The testimony covered 2011 pages—nearly twice as many pages as Gone With The Wind and Benjamin Franklin's Autobiography combined; the master's report contained 198 pages—more than the Dred Scott decision, Marbury v. Madison and the school segregation opinions of the United States Supreme Court combined; the master devoted to the case the equivalent of 12 weeks of 5 days each from 9 to 5 o'clock each day, with an hour for lunch and two afternoons (in the 12 weeks) for golf or other business.[1]

Recognizing that almost everything that either party does during their married life might conceivably be relevant in a divorce case, nevertheless, common sense, practical rules of administration, and even due process require some reasonable limitations on litigation. For the person seeking the fruits of legal action, endless litigation and no litigation are equally fruitless.

There is nothing to indicate that of all the divorce cases in this Commonwealth, this one was unique. If in those counties where judges hear contested divorce cases, a judge were to spend as much time on each case as the master did on this case, he would hear *four* a year—providing he took no vacation.

---

[1] The record of another devoted master can be found in *Daugherty v. Daugherty*, 57 Dauphin 32, 33, 34 (1945).

In addition to considering the husband's ability to pay and the time actually devoted to the case by the master, I think the court should impose a third test in setting a fee. It should limit the time for which fees are to be paid to that time which is *reasonably necessary* to determine the issue. I can conceive of no divorce case which cannot be fully heard and justly determined in a fraction of the time for which the master is seeking remuneration in this case.

Although I am inclined to consider a fee of $2500 to be sufficient, I recognize that the exact amount which should be allowed is a discretionary matter incapable of mathematical determination, and because the sum considered reasonable by a majority of my colleagues is so close to the above sum, I do not dissent from the award of $3000 allowed by this Court to the master.

---

Dissenting Opinion by Flood, J.:

I cannot subscribe to the extent of the reduction made by this Court in the master's fee allowed by the hearing judge. In my opinion this Court has shifted the financial balance too strongly against the master, who admittedly spent 404 hours—roughly one-fifth of a working year—on this case, in favor of the plaintiff, an osteopathic physician with a comfortable income.

The concurring opinion suggests that the master must bear the responsibility for an inordinately long record and should not profit by failing to keep the case within reasonable bounds. When the case was submitted to us we were not asked to read the 2,000 pages of testimony and we have not done so. Until it is examined, while we may agree that it is very long, I do not understand how we can tell whether it is inordinately long.

The record which we do have before us consists only of the petition for the master's fee and that of counsel

for the defendant, the answers thereto, the reply of the master and the testimony taken on these petitions. This shows the following: An admission, in the answer of the plaintiff who is contesting the fee, of the master's averment that "the record shows that your petitioner adhered strictly to the rules of evidence in the conduct of these hearings, confining the evidence to that which was relevant and material, rejecting duplication, and stopping quarreling and bickering, with due consideration for justice and the rights of the parties, thus confining the time spent to a minimum" (R. 7a, 11a).

In view of this specific admission by plaintiff's counsel who is opposing this petition so strenuously, I do not see how we can conclude without reading the full record in the divorce case that this statement made by a reputable member of the bar, concurred in by another who is opposing his petition (R. 7a-11a) is wholly wrong. At the hearing on this petition counsel opposing it made the following statement (R. 39a):

"This is a difficult situation I am presented with. Mr. O'Brien spent considerable time on this case. He did a very good job. He worked hard and I have no reason to doubt or question his testimony as to the time he spent on it.

"My only situation is that when the case was started no one anticipated it would take as long or require as much testimony as was actually required. Unfortunately, the case was contested. In order to make out a case for my client, I was obliged to let the defendant ramble on and on, because I had to make her lose her case rather than try to win it through the plaintiff. I had to let her contradict herself and to do that, I had to let her ramble on and had to use up many pages of testimony."

When a divorce is sought in Pennsylvania upon the ground of indignities, the plaintiff must prove not single acts of neglect, hostility or harassment, but a

course of conduct making his condition intolerable and his life burdensome. The course of conduct which the plaintiff seeks to prove here covered a period of fifteen years. He offered not only his own testimony but also that of two of the children of the parties, now living with him, to prove these events. His wife is bitterly contesting his suit, and she offered not only her own testimony but that of the other two children, now living with her, to contradict him. All six testified concerning events of these fifteen years (although some of the children were too young to remember their beginnings) and it appears from a cursory inspection of the testimony that all but one were cross-examined at some length. It is no easy task to extract the truth from conflicting statements of the events of fifteen years of married life about which all the principal witnesses are apt to be emotional and have no doubt been rationalizing their own conduct over the years and in preparation for the trial. Robert Browning in exploring the ancient murder case in "The Ring and the Book" evoked no more witnesses than were called here. Yet he used more than 20,000 highly concentrated pentameters to discover for his readers the "pure crude fact secreted from man's life when hearts beat hard".

Twenty-three years of trial court experience have not persuaded me that in determining credibility there is any substitute for vigorous cross-examination of each important witness by adverse counsel and close analysis of the testimony by the fact-finder. And if the judge is to be assisted in his determination as he should be, the master should set forth his analysis fully. As against this analysis, personal observation of the witnesses appears to me a poor measuring rod of credibility.

The events of a troubled married life of fifteen years cannot usually be properly assessed by a selected brief sample of the manifestations of a marital illness

whose symptoms may vary from year to year or even from day to day. Undue limitation of examination can defeat justice perhaps more surely than undue delay. The golden mean is never easy to achieve and unless and until we read the testimony in this case I do not see how we can determine that there has been undue extension of the hearings or of the master's report. There were hints at the argument that this bitterly contested divorce is not over and the day may come when we shall have to read this long record. Until we have done so, it appears to me that we must accept the uncontradicted testimony of two officers of this Court as to its propriety.

There is evidence in the record to justify the hearing judge's conclusion that the plaintiff's gross income averaged much more than the figures found by this Court (R. 76a-78a). His net income may well have been as high as $16,000 per year. Even on the figures accepted by this Court the plaintiff's net income for the year 1960 was over $10,000.

By contrast, the fee allowed to the master, as reduced by this Court, is at a rate which would give him an annual gross income of no more than $15,000. If we were to ask the hearing judge to take evidence as to the expenses of operating a law office in Philadelphia, I feel sure that the master's net annual income on this basis would be less than $7,500.

The plaintiff paid the court stenographer in this case $2,622.80. The hearing judge concluded that $666 of his annual salary should be allocated to the case, based upon the time spent in the hearings. Therefore the stenographer has netted $3,288.80 from this case against the $3,000 allowed to the master who must pay his own expenses from the allowance.

This Court has several times stated that the financial position of the husband must be taken into consideration in fixing the master's fee and I agree with this

principle. But it is shifting too much of the load to require an able and experienced member of the bar, who conscientiously performs his function as master in a lengthily contested divorce case, to accept the fee allowed by the majority in order to make the burden of cost easier for a plaintiff financially situated as this plaintiff seems to be.

It is to be noted that the hearing judge in his opinion stated that plaintiff's counsel, in chambers, had said that he believed that an additional fee of $2,500 (which would make the master's total compensation more than $4,400) was proper. The plaintiff, in his brief, does not challenge the trial judge's recollection on this point. He did take the trouble specifically to point out that he did not agree to $25 per hour except for the actual time spent in hearings, but said nothing about the judge's statement with reference to the additional $2,500 except to say he thought it was dehors the record.

Prior to a reading of the full record in this case I cannot concur in reducing this fee by more than half the amount allowed by the hearing judge.