## Cunningham v. Cunningham

*Irving J. Katz,* for plaintiff.
*Benjamin Pomerantz,* for defendant.

NIX, J., July 14, 1971.—This protracted litigation essentially involves the complaint of Madelaine Cunningham in divorce a mensa et thoro and the cross-suit of Prince Cunningham in divorce a vinculo matrimonii. At this time, we will deal only with the divorce suits and not the collateral matters concerning alimony pendente lite, counsel's fees and disposition of the properties held by the parties as tenants by the entireties. We will dispose of those matters at a further hearing, since they require a current inquiry into the facts.

Madelaine Cunningham filed her complaint in divorce a mensa et thoro on December 2, 1966. On January 11, 1967, Prince Cunningham answered the complaint and filed a cross-suit in divorce a vinculo matrimonii. A master was appointed on October 19, 1967, and he held hearings for the taking of testimony on December 6, 1967, December 21, 1967, February 28, 1968, March 19, 1968, and April 4, 1968. Both counsel and the parties were present at all hearings except for the last, when Prince Cunningham was absent. On July 11, 1968, the master filed his report with the court. The master recommended entry of a decree in favor of plaintiff-husband on the counter-suit on the ground of indignities to the person. He recommended dismissal of the wife's suit which had claimed cruel and barbarous treatment and indignities to the person. Madelaine Cunningham filed exceptions to the report of the master on July 18, 1968.

The case is now in the appropriate posture for final

disposition by this court. We have had the benefit of briefs from counsel and have given deep consideration to the exceptions. In addition to reviewing the master's report, we have carefully read the testimony of the five sessions of the hearing before the master. We have given the report of the master great weight, especially as to credibility, since he saw and heard the witnesses while we have only the sterile typewritten word to draw upon: Olbum v. Olbum, 183 Pa. Superior Ct. 5 (1956); Greer v. Greer, 187 Pa. Superior Ct. 643 (1958). Nonetheless, the master's report is only advisory and not binding on this court, which has a responsibility to make its findings de novo upon the entire record: Rankin v. Rankin, 181 Pa. Superior Ct. 414 (1956); Dash v. Dash, 160 Pa. Superior Ct. 317 (1947), affirmed 357 Pa. 125. Our thorough review of the entire record and of the law applicable to the case has led us to an independent conclusion in agreement with that of the master. Thus, it is our opinion that the proof does not sustain the complaint of Madelaine Cunningham, but does support the complaint of Prince Cunningham. We find that Prince Cunningham is the injured innocent spouse, who has been subjected by the wife to such indignities to the person as to render his condition intolerable and life burdensome; therefore, we grant a decree of divorce from the bonds of matrimony in his favor.

We shall now review the findings of fact as determined by the master and confirmed by our review of the record. The parties were married December 29, 1945. They did not begin to cohabit as husband and wife until the summer of 1946 when they took up residence in Philadelphia. They have lived together at various addresses, all in Philadelphia, continuously to the present. However, since 1966, Madelaine has occupied a bedroom on the second floor while Prince

has lived in the basement. The two living children of the marriage, Patricia and Linda, born in 1948 and 1952, respectively, lived with the parents at the time of the master's hearing. They both testified for their father, relating conditions in the household. Madelaine Cunningham offered the testimony of her mother, sister and three friends. The marriage was a happy one until 1962 when marital discord developed simultaneously with the cultivation by Mrs. Cunningham of an extra-domestic interest in a religious organization and the acquaintances she made in that activity. Interchange between the parties became consistently marked by bickering and nagging by the wife. Madelaine went out every day and on weekends usually did not return until late evening. She rarely ever prepared a meal. Prince Cunningham did all the shopping, and, with his daughters, most of the cooking. In addition to paying all the costs of keeping up the household, he normally would give his wife $10 to $15 per week. In 1964, Madelaine spent one year living in Camden with her mother, who Prince did not know existed until that time. During that year, while absent from the home, she spent some time in a hospital complaining of nervous tension. The testimony of her family doctor established that she had a nervous syndrome or neurosis which caused her anxiety and depression and which was aggravated by the dissension in her marriage. In addition to the arguing, there was name calling and some physical conflict. However, it would appear that the few times Prince struck Madelaine, she had struck him first. Prince may have, on some occasions, called his wife "crazy" but that seems within the limits of typical bickering and name calling. However, Madelaine's statements were far more serious and indicative of studied malice rather than momentary anger. They must be considered serious because they

involved the children. On several occasions, Madelaine accused Prince of having an affair with their older daughter. These accusations were made in the presence of both children.

To warrant a decree of divorce on the ground of indignities to the person, there must be clear and satisfactory proof of a course of conduct which rendered the condition of the other party intolerable and life burdensome, and from which an inference of settled hate and estrangement may be deduced: Nichols v. Nichols, 207 Pa. Superior Ct. 220 (1966). We see in the examples given above and in the many other incidents brought out in the testimony, a pattern of behavior over the years by Madelaine Cunningham toward her spouse which consisted of vulgarity, habitual contumely, studied neglect, intentional incivility, manifest disdain and every other plain manifestation of settled hate and estrangement: McKrell v. McKrell, 352 Pa. 173 (1945). The actions of Prince Cunningham which Madelaine complained of were minor and did not rise to the level of cruel and barbarous treatment or indignities to the person. If anything, they are excused as provoked retaliation: Baxter v. Baxter, 192 Pa. Superior Ct. 62 (1960).

The primary legal challenge to the master's report involves the defense to the libel of indignities of excuse by reason of mental illness. Conduct amounting to indignities is excused by mental or physical illness because the spirit of hate, estrangement and malevolence which is the core of indignities is negated by the condition: Barnes v. Barnes, 181 Pa. Superior Ct. 427 (1956); Stewart v. Stewart, 171 Pa. Superior Ct. 218 (1952). The existence of some degree of mental illness is not alone enough. The illness must have existed at the time of the indignities and have been the cause of the actions. As one court said:

"To be a defense, physical or mental illness must be the cause of defendant's conduct, and the ailment must have produced the acts complained of and have prevented the defendant from conducting herself in a normal and proper relationship toward her spouse": Cox v. Cox, 54 Del. Co. 105 (1966).

That the indignities were the product of illness and, hence, were not willful and intentional is an affirmative defense which must be raised and supported by the respondent: Fisher v. Fisher, 154 Pa. Superior Ct. 497 (1943). The burden is also on defendant to show that *each* alleged indignity was a product of the illness: Manley v. Manley, 193 Pa. Superior Ct. 252 (1960). A bare showing of an illness is insufficient, since the illness may have no relation to the complained of actions or may be responsible for only some actions leaving other indignities unexcused. A person may be irritable and do nasty contemptible things to his spouse due to varied reasons. It is only when the respondent's actions are beyond his control that the spirit of hate and estrangement is negated. Thus, the courts have said that the indignities are excused if they spring from an illness, no matter how slight. The focal point of the inquiry is not the seriousness of the illness, but whether the actions were caused by the illness. With mental illness short of full fledged psychosis, it becomes difficult to distinguish between actions which are the product of the mental problem and actions which are the product of the personality, values and rational intellect of the individual. By placing the burden on defendant to show that each indignity was the product of an illness which placed the action beyond his control, we avoid the danger that nearly all objectionable behavior within the marriage might be excused as the product of mental strain. Where there is marital discord, there is going to be mental strain,

perhaps rising to the level of neurosis. The two may arise simultaneously and then who is to say which came first or caused the other? The libel of indignities would be too easily excused without placing a heavy burden on respondent of showing both the existence of an illness and that the illness prevented the defendant from conducting himself in a normal and proper relationship to his spouse: Carle v. Carle, 192 Pa. Superior Ct. 490 (1960). If such a rational approach is not taken, then use of this defense might make the system unworkable. As one commentator has cautioned:

"The doctrine must not, however, be pushed to extremes. The guilty spouse cannot excuse violence constituting cruelty, or mistreatment amounting to indignities, by the shallow excuse of nervousness or irritability unfounded in any specific ailment. The law still considers the parties as masters of their own conduct unless legal insanity has intervened to blot out the ability to distinguish between right and wrong or recognizable and definable disease has usurped the will, and the ill-treatment is but the normal manifestation of the derangement of the health": 2 Freedman, Law of Marriage and Divorce in Pennsylvania, 700, 1.

In the instant case, Madelaine Cunningham did not carry the burden of showing she had a specific ailment which brought about her objectionable treatment of Prince. The only expert medical testimony offered was that of Dr. Zinner, her family doctor. He diagnosed her physical complaints in 1964 as being psychological and not physiological in origin. Due to the signs of depression and anxiety he detected, he recommended that she spend a weekend away from her home. He also stated that when he treated her in 1967 she was

nervous and tense. Mrs. Cunningham took the advice to relax at her mother's home but stretched the absence from her own home from a mere weekend to a full year. This was not a showing of a specific ailment which directly led to the name calling, accusations, refusal to fulfill the duties of a wife and mother and her constant absence from the home. Madelaine Cunningham made no effort in front of the master to offer the testimony of Dr. Meidt under whose care she was admitted to the hospital. Only after the exceptions to the report were in litigation did she seek to have such testimony admitted by petitioning for reference to the master for that purpose. During the original master's hearing, Madelaine Cunningham's counsel offered the complete hospital record, but Prince Cunningham's counsel objected to its being admitted into evidence. Without the benefit of the doctor's explanatory testimony, we feel that the hospital record could have been used for no more than to verify the hospital stay. Later, Madelaine's counsel made an offer of proof of what Dr. Meidt, her physician for the alleged mental illness, would testify to. Prince's counsel refused the stipulation, and though Madelaine's counsel originally said he would like to set a convenient future date for hearing Dr. Meidt, it apparently was never done and the testimony never became part of the record. Madelaine was given a hearing on the petition for rereference to the master which the Hon. Frank J. Montemuro denied. Judge Montemuro apparently felt that it was not Prince's counsel who did not afford the master the opportunity to hear the testimony, as the petition averred, but that Madelaine's counsel was responsible by not pressing forward and specifically requesting further hearing when the stipulation was refused. Thus, the unavailability of further evidence to support the

defense to the indignities libel is the fault of defendant wife. There is no reason why we cannot decide the issue on the basis of the evidence we do have before us. From the information we do have, it seems unlikely that the further testimony would have any effect, since it seems clear to us, on the basis of common experience, that her acts were not the product of illness but were typical domestic strife. The mere fact that she admittedly had a mental problem and had been hospitalized is not controlling: Cox v. Cox, 54 Del. Co. 105 (1966); Allman v. Allman, 47 West. L.J. 127 (1965); Herr v. Herr, 56 D. & C. 421 (1946). The nervousness and irritability, which were part and parcel of most of the indignities, are in themselves Madelaine's mental problem and are not a product of a specific illness. "An excuse of nervousness or irritability unfounded, however, in any specific ailment is no defense": Kousz v. Kousz, 29 Northampton Rpt. 357 (1957). The specific ailment of Madelaine Cunningham is that she is unable to get along with her husband. Dr. Zinner said that absence from the home would ease her mental state. As the plaintiff in Cox v. Cox, 54 Del. R. 105 (1966), stated: " 'just being away from home seemed to help her, and being away from me seemed to help her.' "

It is our conclusion that the problem here is the marriage itself. We find that there is no merit to the exceptions to the master's report and our independent conclusion agrees with that of the master that Prince Cunningham should be granted a divorce against Madelaine Cunningham. It is our hope that the nerves of all interested parties, which have no doubt been irritated by the length of this litigation, will be calmed by this final disposition.