## Prescott v. Prescott

*Donald A. Semisch,* for plaintiff.
*Malcolm B. Jacobson,* for defendant.

TREDINNICK, *J.,* August 5, 1981—Plaintiff-wife instituted this divorce action alleging the marriage was irretrievably broken, and alternatively, that defendant-husband was guilty of indignities. The complaint sought equitable distribution of marital property, determination of custody of children, support for her children, alimony, and counsel fees.

The divorce aspect of the matter was referred to a master. His report has heretofore been received, and a divorce decree entered as of November 3, 1980. Testimony was received on equitable distribution on February 20, 1981. Hearings on custody were held March 20, 1981 and April 8, 1981. Thereafter, the parties and the children were seen by Marshall D. Schechter, M.D., who submitted a report and recommendation to the court and the parties dated June 14, 1981.

Wife has withdrawn any claim for alimony.

## FACTS

The parties were married on July 15, 1967. This was a first marriage for each party. Two children

were born of the marriage, Robert, 12 and John, 10. The children attend public school.

Husband is 37 years of age and has a B.A. degree (political science major) from Gordon College. Since January, 1976, he has been employed for varying periods by six car dealers. Since March of 1980, he has been employed as sales manager for Wilke Ford in Philadelphia on a salary and commission basis. His salary is $350 per week out of which his take home pay is $298 per week. He grossed $35,700 in 1980.

Wife is 39 years of age and has a B.S. degree in elementary education. She is licensed to teach in Massachusetts, and in fact has taught there. She is apparently a gifted pianist, and has been engaged for some time in teaching piano, at home and at nursery and music schools. She grossed $4,690 in 1977, $3,062 in 1978, and $3,361 in 1979. From 1976 through 1979, she has been attending school studying piano once a week, or at least bi-weekly. Wife intends to increase her teaching activity, and projects that her 1981 gross income will be $28,125.

Although divorced as of November 3, 1980, the parties still reside in the marital premises at 337 Casals Place, Ambler, Montgomery County, Pa. That property was purchased in November 1976, for $81,500. It was financed by $5,000 borrowed from wife's father, $6,000 borrowed from husband's father, and a mortgage. The mortgage payment is $630 per month and taxes are approximately $200 per month. The current mortgage balance is approximately $70,000. Wife estimates its current value at $118,000-$120,000. Husband estimates its current value at $130,000-$135,000. The $5,000 debt to wife's father has been repaid. Wife asserts that husband's father has forgiven the

$6,000 obligation. The father denies this is so. We find that obligation still exists as a joint debt of the parties.

The parties were more or less in financial difficulties throughout the marriage, however, for several years after moving into their present home, wife handled the finances, and indebtedness (except for the mortgage and money owed to parents) was reduced to about $7,000 at the end of 1977. Commencing in January, 1978, husband resumed control of the family finances, and some slippage occurred. By mid 1979, the parties were about $9,000 in debt.

Present debt balances are as follows:

| | |
|---|---:|
| Household Finance Co. | $2,200 |
| First Ocean Bank | 1,900 |
| VISA | 1,600 |
| Robert Prescott, Jr. | 7,620 |
| Wilke Ford | 1,700 |
| Al Cook (husband's stepfather) | 2,450 |
| | $17,470 |

There are, in addition, numerous other miscellaneous obligations totalling $830.

## MARITAL PROPERTY

From the evidence, the court finds that the following assets are marital property, as defined by the Divorce Code of April 2, 1980, P.L. 63, 23 P.S. §401:

1. Real Estate: Premises 337 E. Casals Pl., Upper Dublin Township, Montgomery County, Pa. Value: $120,000. (Subject to mortgage with a principal balance of approximately $70,000). Jointly owned.

2. Tangible Personal Property: Household fur-

nishings in place at above premises. Value: $18,590. Jointly owned.

## DISCUSSION—EQUITABLE DISTRIBUTION

The parties have specifically requested the court to resolve only the question of equitable distribution of the real estate at this time, expressing confidence that after that is resolved, they will be able to amicably settle disposition of the personalty. Accordingly, the matter will be dealt with without reference to the personalty.

A careful review of the ten criteria set forth in section 401(d) as applied to the circumstances of this case reveals no shockingly outstanding disparity between the parties. The primary source of funds leading to the acquisition and maintenance of the real estate has been the husband. Furthermore, he has been involved financially in wife's educational advancement (in music) during the marriage, although the court recognizes that wife primarily paid for this from her own earnings. On the other hand, wife's contribution as a homemaker is an important aspect, and in a marriage of this length, at least, is a strong factor in her favor. Also, it appears that the husband's income picture is now significantly better than wife's. The record indicates that he has had some trouble with employment in the past. This appears to be resolved now. He has been employed as a sales manager of a car dealership since March 1980, and as noted previously earned $35,700 in 1980—a year in which automobile sales were low. Wife testified she expected to earn some $28,000 in 1981. This is highly speculative. She has not earned anything like that before, and has, by history, a tendency to be optimistic about her earning ability. Furthermore, it

has been her position throughout that the real estate ought to be awarded outright to her, or at least possession given her until the children are of age. In support of that position, it is apparent that she felt it important to convince the court that she could earn enough to maintain the property. The fact of the matter is that husband is significantly better off financially than wife at this point. It is reasonable to conclude that such will be the case in the future.

The remaining criteria are not particularly helpful.

It is suggested by an early Pennsylvania text on the Divorce Code that: "While many factors go into the formula for post-divorce division (of property), it is important to note that record ownership of assets remains significant and the court must find that equity requires a transfer of ownership from one party to the other."* This language suggests that where husband and wife jointly own an asset, as here, there is an initial presumption that each is entitled to half, and that this ratio may be disturbed only when equitable considerations so dictate.

The factual situation does not suggest a radical disturbance of the legal interest of the parties in the real estate. However, considering the factors which do have application, as mentioned hereinabove, we are satisfied that the overall equities require an adjustment in favor of the wife, and will accordingly award her 65 percent of the real estate.

The parties have suggested that the court is required to determine, where that is an issue, whether debts incurred by the parties are joint debts. In the sense that the statutory criteria (and common sense) requires that the "estate" and

---

*Pa. Divorce Code, Perlberger, 1980. §5.2.

"needs" of the parties are to be considered, a resolution of liabilities will usually be helpful if not required so that net worth may be computed. Unfortunately, the record in the present case is deficient in this respect, and the court is therefore unable to determine definitively the status of the obligations. For purposes of equitable distribution, we have concluded that the bulk of them are joint obligations of the parties—certainly, the obligation to Robert Prescott, Jr. is in that category. As to the remainder, however, because of a lack of necessary information in the record, the parties will be required to resolve the matter between them.

## CUSTODY

As noted previously, although divorced, the parties and the children still live under the same roof. Initially, the court was of the opinion that custody might have a significant bearing on equitable distribution, and thus a decision on the latter was deferred pending completion of testimony on the custody issue. Upon reflection, this now seems to the court to be legally doubtful. The criteria to be considered by the court as set forth in §401(d) of the act make no mention of the custody status of children. It is true that the court must consider the "needs" of the parties, and that these are undoubtedly affected by custody arrangements. However, such needs are ordinarily compensated by alimony and support.

In any event, the parties remain under the same roof, and in that sense, have no present need for an order relative to custody. The present arrangement is certainly unusual, but the net effect of it is (except for the emotional upheaval) as though this were still a family unit.

A decision in respect to custody is therefore deferred pending separation of mother and father. The record in that respect will remain open to receive further evidence as may be required.

## COUNSEL FEES

A stipulation has been filed by counsel stating that fees charged by wife's counsel total $2,800, and by husband's counsel, $2,835, both as of March 26, 1981.

The Divorce Code of 1980 simply provides that "The Court may, in proper cases, allow a spouse . . . reasonable counsel fees . . ." (§ 502). The law in this respect appears unchanged. An award of fees is essentially within the discretion of the court, but should be predicated primarily upon the need of the spouse. "Need" is a relative factor hence one spouse's income, and separate estate, may be considered in relation to that of the other: Hammond v. Hammond, 210 Pa. Superior Ct. 386 (1967); Cox v. Cox, 187 Pa. Superior Ct. 177 (1958); Orsuto v. Orsuto, 171 Pa. Superior Ct. 532 (1952). In the present case neither spouse has a separate estate nor any accumulated wealth. Furthermore, as noted heretofore, the relative earnings of the parties—actual on the part of the husband, predicted on the part of the wife—are not too disparate. Under these circumstances each party should bear his or her own counsel fees.

## DECREE NISI

And now, August 5, 1981, it is ordered and decreed that

(1) The marital property of the parties is allocated and awarded as follows:

A. To Joanne M. Prescott, 65 percent of the net value of premises 337 Casals Place, Ambler, Montgomery County, Pa.

B. To Robert E. Prescott, III, 35 percent of the net value of premises 337 Casals Place, Ambler, Montgomery County, Pa.

C. Unless the parties agree to a sale of the interest of one in said real estate to the other within 30 days of the date hereof, they shall, on the 31st day hereafter list said premises for sale on the open market on such terms as they shall agree, but in the absence of such agreement, the list price shall be not less than $120,000. Unless they otherwise agree upon the offer of any purchaser ready, willing and able to purchase at a price of $120,000 or greater, each shall execute all documents necessary to consummate a sale in accordance therewith.

D. By express agreement of the parties furnishings and other personalty listed on the inventory and appraisement are to be divided between the parties as they shall susequently agree.

(2) The several petitions for the award of counsel fees are denied.

Unless exceptions are filed hereto within ten days of service hereof, this decree shall become the final decree of the court as of course.